All the Justices concurring.

| 35 | 185 |
| 38 | 640 |
| 35 | 185 |
| 53 | 118 |
| 35 | 185 |
| 55 | 588 |

THE ST. JOSEPH & WESTERN RAILROAD COMPANY v. DEWITT C. WHEELER.

1. PASSENGER *on Construction Train; Reasonable Care.* W., a boy thirteen years of age, asked and obtained leave to ride upon a construction train from the conductor, who had been instructed by the railroad company not to permit passengers to ride on his train, but the instruction had not been communicated to W. The train had a caboose car attached, such as are attached to the freight trains of that road, and upon which passengers are carried. It also appeared that notwithstanding the instruction mentioned, passengers were frequently carried on that and other construction trains. While W. was riding upon the caboose, a collision with another train occurred through the negligence of the railroad company, which resulted in W.'s death. *Held,* That under the circumstances W. was lawfully upon the train, and the company was held to the exercise of reasonable care and diligence toward him.

2. ———— *Implied Authority of Conductor.* It being customary to carry passengers upon the construction trains, persons having no notice of a contrary rule of the company, had a right to assume that the conductor had authority to carry persons on such trains, and that the granting of permission by him fell within his general authority as manager of the train.

3. MINOR CHILD — *Manumission — Damages.* In a suit to recover damages for the death of a minor under § 422 of the code, the fact that the parents had released to such minor his time and services during his minority, may properly be considered by the jury in determining the amount of recovery, but it will not prevent the parents from recovering any pecuniary damages, such as the loss of support, that they may be able to prove resulted from his death.

*Error from Doniphan District Court.*

ACTION by *DeWitt C. Wheeler*, as administrator of the estate of Frank Wheeler, deceased, against *The Railroad Company*, to recover damages for the benefit of the next of kin of the decedent, whose death is alleged to have been caused by the negligence of the defendant. Trial at the December Term, 1884, and judgment for plaintiff for $1,500. *The Company* brings the case here. The material facts are stated in the opinion.

*Doniphan & Reed*, and *T. W. Heatley*, for plaintiff in error.

*W. D. Webb*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: De Witt C. Wheeler, as administrator of the estate of Frank Wheeler, deceased, brought this action under § 422 of the civil code, to recover damages for the benefit of the next of kin of Frank Wheeler, whose death, it is alleged, was caused by the gross carelessness and negligence of the St. Joseph & Western Railroad Company. There was but little dispute concerning the facts of the case. On June 17, 1881, the defendant below was operating a railroad which runs from Elwood westward through Doniphan and other counties of Kansas to Grand Island, Nebraska. On that day a work or construction train with a caboose car attached, was sent from Elwood to a point near Troy, for the purpose of being loaded with dirt to be brought back for the repair of the road-bed between Wathena and Elwood, with instructions to work until ten o'clock in the morning without regard to train No. 7, a freight train going west. While the train was being loaded, Frank Wheeler, in company with another boy, came up to the construction train, and learning that it was soon going eastward, asked the conductor if he might ride back. The conductor consented, and Frank Wheeler rode in the caboose car with other persons that belonged to the train. He paid no fare, and was not asked or expected to pay any. Soon after

he was taken on, the construction train backed eastwardly toward Wathena, and before reaching that place, and at 9:45 A. M. of that day, it collided with the engine of train No. 7 going westward, in which collision Frank Wheeler was killed. The conductor of the construction train had instructions from the railroad company not to allow persons as passengers to ride upon his train except those who belonged to it, but this instruction was not communicated to Frank Wheeler. Upon these and some other facts which were shown upon the trial, a verdict for $1,500 was given in favor of the plaintiff.

One of the questions raised is, that there was no correspondence between the pleadings and the evidence. The point is made that the plaintiff alleged that Frank Wheeler was a passenger, a term which it is claimed implied that Frank Wheeler was traveling in a public conveyance by virtue of a contract, express or implied, with the carrier, as the payment of fare, or that which is accepted as an equivalent therefor, while the evidence offered showed that he was carried on a train not designed for passengers, that no fare was collected or expected to be paid, and therefore that he did not stand toward the company in the relation of a passenger. This is one sense in which the term is used, but not the only one. It is commonly applied to anyone who travels in a conveyance, or who is carried upon a journey, irrespective of the character of the conveyance or of compensation to the carrier. While the plaintiff alleged that Wheeler was carried as a passenger, he nowhere averred that he was carried for hire, nor can it be said that the petition was framed upon the theory that there was a contract relation between deceased and the company. It was rather upon the theory that he was not a trespasser upon the defendant's train, and it is specially alleged that he was upon the train with the knowledge and consent of the conductor. From this averment it is manifest that the pleader did not rely upon any agreement between the company and Wheeler, and did not intend to hold the company to extraordinary care, as it would be held in carrying persons who were passengers in a strictly legal sense; but rather, that as Wheeler was upon

the train with the consent of the conductor, he was not wrongfully there, and the company owed him the duty of ordinary care.  The action was founded upon the neglect of the company and not upon the breach of a contract; and allegations of the relation which he occupied toward the company are only material for the purpose of determining and fixing the grade of care owing to him by the company.  As we interpret the petition, it did not allege that the relation of carrier and passenger existed by reason of an agreement between the deceased and the company, and therefore that there was no substantial variance between the pleadings and the evidence.

A series of instructions were prepared by the railroad company and disallowed by the court, and their refusal is assigned as error.  Most of them in effect instructed a verdict in favor of the defendant, and asserted that the company cannot be held

**1. Passenger on construction train; reasonable care.** liable for injury to one who rides upon a construction train with the consent of the conductor, and who is not a passenger in the ordinary sense. They were properly refused.  We concur with the view of the law taken by the trial judge where he states that:

"Under the admitted facts and the evidence in the case, the said Frank Wheeler was not a trespasser upon defendant's train, although he was not in legal contemplation a passenger.  A common carrier of passengers is bound to exercise extraordinary care towards its passengers, and is liable for slight negligence, but it does not owe the same degree of care to a person on one of its vehicles or trains, who does not stand in the relation of a passenger.  To such persons a carrier owes only the duty of ordinary care, which is that degree of care which persons of ordinary prudence would usually exercise under like circumstances."

It is contended that Frank Wheeler was an intruder upon the train, for whose injury no liability could arise against the company, for two reasons: First, that the conductor had instructions not to carry passengers on the construction train; and second, that from the nature of the business which was being done with the train, and also its equipment, it was apparent that the company did not permit passengers to be car-

ried thereon. Neither of these circumstances will defeat a recovery in this case. It is true the conductor had been instructed not to allow persons to ride upon his train as passengers, but Frank Wheeler had no knowledge of such instruction. He had asked and obtained permission to ride upon the train. It was within the range of the employment of the conductor to grant such permission. He had entire charge of the train, and was the general agent of the company in the operation of the train. As he was the representative of the company, his act, and the permission given by him, may properly be regarded as the act of the company. If Wheeler had furtively entered upon the train, or had ridden after being informed that the rules of the company forbade it, or had obtained permission only from the engineer, brakeman, or some other subordinate employé, the argument made by counsel might apply.

In *Dunn v. Grand Trunk Rly.*, 58 Me. 187, the plaintiff went on board a freight train with the knowledge of the conductor. One of the regulations of the company prohibited conductors from allowing passengers to travel upon its freight trains. He was not directed or requested to leave, but paid the usual fare to the conductor, and during the journey the car upon which he rode was thrown from the track and he was thereby injured. The court held that under the circumstances he had a right to suppose himself rightfully on board, and that if the act of the passenger did not conduce to the injury received, the company was responsible for the consequences of its negligence or want of care. *C. & A. Rld. Co. v. Michie, Adm'x*, 83 Ill. 427, was an action by the administratrix to recover damages for the death of her husband, which occurred while he was riding upon an engine. The rules of the company provided that no persons except the road master and conductor of the train were allowed to ride on the engine without the permission of the superintendent or master mechanic. He applied to the engine driver and was given permission to ride. It was ruled that the driver of the engine occupied only a subordinate position, and that his permission was not the permis-

sion of the company, as he had no power to give it; but it was added that —

"Had the conductor of the train given the permission, or knowing the deceased was upon the engine suffered him there to remain, it might be considered the act of the company, as the conductor has control of the entire train, and his act is rightfully regarded as the act of the company."

In the case of *Wilton v. Middlesex Rld. Co.*, 107 Mass. 108, several young girls were invited by the driver to ride upon one of the defendant's cars. They got upon the front platform, and the driver immediately struck his horses, when by reason of their suddenly starting, the plaintiff lost her balance and fell so that one of the wheels passed over her arm. It was admitted that the plaintiff was not a passenger for hire, and that the driver had no authority to take the girls upon the car unless such authority was implied from the fact of his employment as driver. In deciding the case the court said:

"The driver of a horse car is the agent of the corporation having charge in part of the car. If, in violation of his instructions, he permits persons to ride without pay, he is guilty of a breach of his duty as a servant. Such act is not one outside of his duty, but is one within the general scope of his agency, for which he is responsible to his master. In the case at bar, the invitation to the plaintiff to ride was an act within the general scope of the driver's employment, and if she accepted it innocently, she was not a trespasser. It is immaterial that the driver was acting contrary to his instructions."

In *Lucas v. Milwaukee & St. P. Rly. Co.*, 33 Wis. 53, it was held that if a person rode upon a freight train without authority from some person competent to give it, he would have been unlawfully there, and could not have successfully enforced the rights of a passenger against the company, but the company had authorized the carriage of passengers upon some of its freight trains, and therefore a different ruling was applied. It was stated that —

"By making a portion of its freight trains lawful passenger trains, the defendant has, so far as the public is concerned, apparently given the conductors of all its freight trains authority

to carry passengers, and if any such conductor has orders not to carry passengers upon his train, they are or may be in the nature of secret instructions limiting and restricting his apparent authority, and third persons are not bound by such instructions until informed thereof."

In support of the same view, we cite *Jacobus v. St. Paul & Chicago Rly. Co.*, 20 Minn. 125; *O. & M. Rld. Co. v. Muhling*, 30 Ill. 9; *Gradin v. St. Paul & Duluth Rly. Co.*, 30 Minn. 217; 11 Am. and Eng. Rld. Cases, 644; *Lawson v. C. St. P. M. & O. Rld. Co.*, 21 Am. and Eng. Rld. Cases, 249.

*Eaton v. D. & L. W. Rld. Co.*, 57 N. Y. 383, is relied upon as an authority for the position assumed by the company. The circumstances of that case are not like the one before us, and the decision is based on the special circumstances of the case. It differs materially in its facts from the one at bar. There, the party injured was invited by the conductor to ride upon a freight train with the promise to get him employment as a brakeman; and besides, it did not appear that passengers were either habitually or occasionally permitted to ride upon the freight trains of that company. Here, although disputed, it was satisfactorily shown that passengers were not only occasionally but commonly carried upon the freight and construction trains of the defendant. A. J. Shuster, who was employed upon the construction train at-the time that Frank Wheeler was killed, testified that passengers were carried upon that train under certain circumstances. Albert Hinchman, who had been on the train three or four months, stated that the company had always carried passengers on all its freight trains while he was upon the road, and that passengers had frequently ridden on the construction train, and had frequently been taken on at points other than stations where the train was at work. Henry Wheeler states that prior to the accident he rode upon the construction train to Wathena, and paid fare to the conductor for such ride. A. J. Mowry, who traveled a great deal upon defendant's road, testified that it was usual to carry passengers on all caboose cars; that he rode on every kind of train that was ever on the road, and had ridden on

defendant's construction trains before June 17, 1881, and paid fare to the conductor. It will thus be seen that it was customary for passengers to ride, with the permission of the conductor, upon all freight and construction trains upon the defendant's road; and the New York case, while similar in some of its features, is not an authority here. Persons not informed of the instructions given to the conductor, had a right, under this prevailing practice, to assume that the conductor had authority to carry passengers on the construction train, and that the granting of permission by him in such cases fell within his general authority as manager of the train. Nor was there anything in the exterior appearance of the car in which the deceased rode to notify him that passengers were not carried therein. The testimony is that it was a caboose car similar in construction and appearance to those which were attached to all of defendant's freight trains, and upon which, as has been seen, passengers were carried.

2. Implied authority of conductor.

The railroad company asked an instruction that if the father of Frank Wheeler had prior to the accident relinquished unto him the right to his time and services during his minority, and that this relinquishment was unrevoked at his death, the plaintiff can recover only nominal damages. It was properly rejected. In such an action the plaintiff does not sue for his own benefit, but only as the personal representative of the deceased. The damages recovered inure to the exclusive benefit of the widow and children if there are any, and if not, to the next of kin. In this case the damages were for the benefit of the next of kin, who were the father and the mother. The sum to be recovered was therefore not for the benefit of the father alone, who may have made the relinquishment, but for the mother also. Besides, parents may recover for the death of a child who has attained his majority if they can prove any pecuniary damages resulting therefrom, such as the loss of support. In estimating the pecuniary benefit which would accrue to his parents by the continuance of his life, the fact that the parents relin-

3. Manumission of minor child; death; damages.

quished to Frank Wheeler his time and services during his minority, was an element which might properly be taken into consideration; and this much was stated to the jury.

None of the other objections raised are at all tenable, and as the charge given fairly presented the law of the case to the jury, the errors assigned will be overruled, and the judgment will be affirmed.

All the Justices concurring.