GEORGE EVERETT, RESPONDENT, v. OREGON SHORT LINE AND UTAH NORTHERN RAILWAY COMPANY, APPELLANT.

RAILROADS.—PASSENGER.—FREIGHT TRAIN.—Where agent of a railway company, such as a conductor of a freight train, permits a person to ride upon a freight train, which is forbidden by the rules of the company to carry passengers, nevertheless if the person acted in good faith, he will be held entitled to all the rights of a passenger.

ID. — TRESPASSER. — GROSS NEGLIGENCE. — CONTRIBUTORY NEGLI-
GENCE.—Even if the plaintiff was a trespasser upon the train,
yet if he was injured by the negligence of the railroad com-
pany, in its failure to use ordinary care after becoming aware
of the plaintiff's negligence, the plaintiff will be entitled to
recover in spite of his contributory negligence.

NEGLIGENCE.— PASSENGER INJURED.— TRESPASSER.—Where it ap-
peared that plaintiff, section foreman of the defendant, got
upon a train to come to Salt Lake, on account of sickness in
his family .there urgently requiring his presence, and without
knowing it boarded an extra freight train, because the passen-
ger train had gone, and paid the conductor of the train one
dollar, which was less than the regular fare, although plaintiff
did not know it, and the conductor told him to get into a
box car, claiming that the caboose was full, and afterwards
the same man helped him out of the car into the caboose,
shortly after which he was badly injured because of freight
cars being violently and negligently driven by a switch engine
against the caboose, and the train was in fact a train forbidden
by the rules to carry passengers, which fact plaintiff did not
know, but thought it was a regular freight train, which was
in the habit of carrying passengers; *held*, that the plaintiff
was on the train in good faith as a passenger, that even if he
was guilty of contributory negligence, defendant could have
avoided injuring him, and hence plaintiff was entitled to
recover.

EVIDENCE.—PERSONAL INJURY.—REASONS FOR AGENT'S ACT.—It is
immaterial what reason a brakeman had for permitting a
person to ride upon a train in violation of the rules of the
company, because *semble* that what would excuse the brake-
man's negligence would not excuse the railroad company.

APPEAL from a judgment of the district court of the
third district and from an order refusing a new trial, Hon.
Charles S. Zane, judge. The opinion states the facts,
except that the third instruction referred to in the opinion
was as follows:

"Even if the plaintiff was on the caboose in bad
faith, without having paid his fare, or trying to beat
his way, in violation of the rules of the company and

knew it, still if he was injured by defendant's agents reck-
lessly running cars against the caboose, when they had
reason to know that plaintiff might be injured thereby,
that would amount to gross negligence and plaintiff could
recover, but not for ordinary negligence under the same
circumstances."

The testimony that was excluded was as follows: A writ-
ten stipulation had been entered into to the effect that if
one Slattery were present as a witness he would testify
"that the train men were negligent in causing the train to
strike against the caboose as violently as it did," and if
present would also testify to the facts set forth in the
affidavit of P L. Williams, and "such testimony is hereby
stipulated to be read and considered in evidence." Then
the affidavit of P. L. Williams was read in evidence, and
upon objection made to the statement therein, "I
supposed he was a car-repairer," it was excluded as imma-
terial.

*Messrs. Williams and Van Cott*, for the appellant.

It was error for the court to exclude the  testimony
of witness Slattery, because it was stipulated that such tes-
timony might be considered and read in evidence. *Keys*
v. *Warner*, 45 Cal. 60; *Dreyfous* v. *Adams*, 48 Cal. 131.
Outside the stipulation the testimony was admissible in
order to explain why the trainmen did not interfere with
the respondent when he was seen in the caboose. *Railway
Co.* v. *Nichols*, 12 L. A. R. 475 (9 Kans.). The court
made the right of plaintiff to recover to depend upon his
good faith, but the question was whether or not he was a
passenger, and this was irrespective of his good faith.
Patterson Railway Acc. Law, secs. 211, 215. *Powell* v.
*Railway Co.*, 8 South. Rep. 738; *Railway Co.* v. *Nichols*,
*supra*. The court adopted a theory in charging the jury,

that was not raised by the pleadings, and this was error. *Railway Co.* v. *Mehlsack*, 131 Ill. 61.

The appellant requested the court to charge as to whether or not the brakeman could make the respondent a passenger. This was refused, and was erroneous. *Waterbury* v. *Railway Co.*, 17 Fed. Rep. 671. *Eaton* v. *Railway Co.*, 57 N. Y. 322; *Flower* v. *Railway. Co.*, 69 Pa. St. 210; *Railway Co.* v. *Michie*, 83 Ill., 427; *Robertson* v. *Railway Co.*, 22 Barb. 91; *Snyder* v. *Railway Co.*, 60 Mo. 413; *Darwin* v. *Railway Co.*, 55 At. Rep. 32; *Powers* v. *Railway Co.*, 26 N. E. Rep., 446. The respondent could not be held to be a passenger and hence could not recover. *McVeety* v. *Railway Co.*, 47 A. and E. R'y Cas. 471, and cases above. The whole question of gross negligence was entirely out of the case and was improperly submitted to the jury.

*Messrs. Ferguson and Cannon*, for the respondent.

BARTCH, J.:

The plaintiff in this case claims damages for personal injuries, alleged to have been received while a passenger on defendant's train at North Salt Lake. The jury rendered a verdict in his favor for the sum of $4,500, and, upon judgment being entered for that amount, the defendant appealed to this court. The evidence shows substantially that the plaintiff had been in the employ of the defendant, as section hand and section foreman, for a period of about eight years, and on the day of the accident was so in its employ, as section foreman, at the city of Ogden, Utah; that on that day he received word from his family, who resided at Salt Lake City, that several of his children were sick with diphtheria, and were quarantined; that, after he quit work in the evening, it being about dark, and, being too late for defendant's passenger train, he went to a

freight train, where he saw a man with a lantern, who told him that he was the conductor; that, after giving this man a dollar to be allowed to ride on the train to Salt Lake City, he assisted plaintiff into a box car, partially filled with brick, claiming that the caboose was full; that in this car he rode to North Salt Lake, where the same man helped him out and into the caboose; that after he was in the caboose the conductor and two other employes came in, but made no objections to his being there; that, shortly after the conductor and employes went out of the caboose, the switch engine ran freight cars against it, without giving any signal, and with such force as to produce a violent shock, which caused the injuries complained of; that, after the collision, the employes re-entered the caboose, and found the plaintiff lying on the floor, stunned and seriously injured; that it had been the custom of defendant to carry passengers on freight trains, except on extra freight trains, and on these passengers could be permitted to ride by the train dispatcher, but plaintiff did not know he was on an extra train; that the fare on passenger trains from Ogden to Salt Lake City was $1.75, but plaintiff claims he did not know the fare on freight trains.

It was admitted on the trial that the engineer of the switch engine and the other employés in the train, if present, would testify "that they were negligent in causing the train in question to strike against the caboose as violently as it did." In view of the facts and circumstances thus proved on the trial; the court, in the course of its charge, instructed the jury as follows: "If you believe, from a preponderance of the evidence that the plaintiff was in the car, commonly called the 'caboose,' of the defendant, at North Salt Lake, and that he was there in good faith, and under circumstances authorizing him to believe that he was there lawfully, and that he had a right to ride in the caboose, and that he was without fault, and

that the defendant was guilty of negligence, which caused the injury to him, then you should find a verdict for the plaintiff. On the contrary, if you find that the plaintiff's negligence in any degree contributed to the injury, then you should find a verdict for the defendant."

Counsel for appellant insist that the material question in this case is as to whether plaintiff was a passenger, and that this instruction, to the effect that if he was in the caboose in good faith, and believed he was lawfully there, and had a right to ride there, etc., was erroneous, and presented an immaterial issue to the jury. If it were conceded that he was not lawfully in the box car, could it be said that he was not lawfully in the caboose? He was there with the knowledge of the conductor who had charge of the train. If this was an extra train, on which passengers were not allowed to ride, it was the conductor's duty to inform him, and request him to leave in accordance with the regulations of the defendant; and, if plaintiff had disregarded such request, the conductor could have lawfully removed him, using no more force than was necessary for that purpose. The conductor failing to do this, it must be presumed that the plaintiff was rightfully there. A railroad company has a right to designate which of its freight trains shall carry passengers, and which shall not. It has a right to make regulations, and when so made, they are binding on its servants. Those riding on its trains are not presumed to know them. If its servants neglect or violate them, and, because of such neglect or violation, injury results to strangers, the company will be liable. It employs its servants, and has the power of removal, and the law is that the principal is bound by the acts of his agents. His liability does not necessarily arise because of any contract or privity between him and the party injured, nor is it affected by any relation existing between the parties.

It is true, in many instances such liability is founded

on contract, as where a traveler, by stage coach, is injured through the negligence of the driver, or where the owner of a public conveyance undertakes to carry persons or property, and injury results through the negligence of his agents. Here an action will lie against the owner founded on contract. Then there are numerous other cases where an action will lie against the principal for injury, caused by the negligence of his servant, wholly irrespective of any contract; as where one is lawfully on the highway, and a servant carelessly drives a vehicle against him, and injures him. And, generally, the master is liable for the negligence of his servant so long as the servant acts within the scope of his employment; and this, irrespective of any contract, express or implied. The maxim *respondeat superior* applies to the class of cases like the one under consideration. It makes the acts of the agent the acts of the principal, and upon this depends the safety of third persons in their dealings with agents. It is founded on public policy and convenience. To determine the liability of the principal for the negligent act of his agent, it is necessary to inquire, not as to whether the agent was authorized to do the act from which the injury resulted, or whether the act was done in violation of the principal's instructions or regulations, but as to whether the act was done by the agent, within the scope of his employment.

Story, in his work on Agency, in section 452, says: "It is a general doctrine of law that, although the principal is not ordinarily liable (for he sometimes is) in a criminal suit for the acts or misdeeds of his agent, unless, indeed, he has authorized or co-operated in those acts or misdeeds, yet he is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances or misfeasances, and omissions of duty of his agent in the course of his employment, although the principal did not authorize or justify or par-

ticipate in, or indeed know of, such misconduct, or even if he forbade the acts or disapproved of them." The learned author, in the same section, states the reason upon which the law is founded as follows: "In all cases the rule applies, *respondeat superior*, and it is founded upon public policy and convenience; for in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him, through the instrumentality of agents. In every such case the principal holds out his agent as competent and fit to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of his agency." The same doctrine is laid down by Mechem in his work on Agency (section 734).

The conductor of the train in question was the agent of the defendant. If the plaintiff was wrongfully on the train, it was his duty to so inform him, and remove him therefrom, which removal, so far as the evidence shows, would have avoided the injury. His neglect in doing this is the neglect of his principal. In this view of the case, the plaintiff was lawfully on the train, and the court did not err in its application of the law, as presented in the above instruction. Where a company has adopted the system of carrying passengers on part of its freight trains, and a person, in good faith, goes on one which is not allowed to carry passengers, not knowing it to be such a train, and is allowed to remain there by the agent of the company, he will be entitled to all the rights and remedies of a person lawfully on such a train which does carry passengers. It is the duty of the company to carry him safely. Every person riding in a railroad car is presumed to be there lawfully, and the burden is upon the carrier to show affirmatively that he was a trespasser. *Railroad Co.* v. *Derby*, 14 How. 468; *Railroad Co.* v. *Books*, 57 Pa. St. 339; *Whitehead* v. *Railway Co.*, 99 Mo. 263, 11 S. W. Rep. 751;

*Lucas* v. *Railway Co.*, 33 Wis. 41; *Railroad Co.* v. *Muhling,* 30 Ill. 9; *Bretherton* v. *Wood,* 3 Brod. & B. 54.

Under the evidence, as disclosed by the record in this case, the third instruction, on the question of gross negligence, was properly given to the jury. The evidence shows that, after the plaintiff's position was known to the defendant, it ran its cars against the caboose in such a violent manner as to throw him to the floor, and, when found, he was unconscious and severely injured. Under such circumstances, the jury had a right to pass on the question of gross negligence, for, even if the plaintiff was a trespasser, the defendant had no right to carelessly and recklessly injure him. In any event, it was liable for gross negligence. *Railroad Co.* v. *Horst,* 93 U. S. 291; *Waterbury* v. *Railroad Co.,* 17 Fed. Rep. 671; *McGee* v. *Railway Co.,* 92 Mo. 208, 4 S. W. Rep. 739.

Counsel for appellant further insist that the plaintiff was guilty of contributory negligence in getting on the train and into the caboose in question. The contributory negligence complained of is that the plaintiff went on one of defendant's trains which was not allowed to carry passengers. If this is negligence *per se,* then it may be said of every person who is injured on a train that he is guilty of negligence, for had he not gone on the train he would not have been injured. The fact of the plaintiff going into the caboose was not such an act as would make him guilty of negligence unless he was there after being admonished of danger, or in disregard of his perilous position, knowing it to be such; but no such monition or disregard appears from the evidence. On the contrary, the reasonable inference to be drawn therefrom is that he was in the caboose with the consent of the conductor and other servants of the defendant. This was a question of fact to be determined by the jury.

But even if he were guilty of negligence, as claimed,

this would avail the defendant nothing if, by the use of ordinary care, after his position had been discovered, the injury could have been avoided. To hold otherwise would be to permit the party who is guilty of the first negligence to be willfully and wantonly injured by the other. "It is now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was proximately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him. We know of no court of last resort in which this rule is any longer disputed, although the same rule, in substance, but inaccurately stated, has been made the subject of strenuous controversy." 1 Shear. & R. Neg. § 99.

In *Northern Cent. Ry. Co.* v. *State*, 29 Md. 420, the court said: " Though the deceased may have incautiously gotten upon the track of defendant's road, yet if he could not, at the time of the collision, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence, assuming that there was such, the right to recover exists. If, however, by ordinary care, he might have avoided the consequences of such negligence on the part of the defendant he would be the author of his own misfortune, and therefore no action would lie. The obligation is mutual to use care to avoid the consequences of each other's negligence, the whole matter being for the determination of the jury, as to whose negligence and want of care constituted the proximate and direct cause of the injury." *Wagner* v. *Railway Co.*, 97 Mo. 512, 10 S. W. Rep. 486; *Davies* v. *Mann*, 10 Mees. & W. 545; *Railroad Co.* v. *Still*, 19 Ill. 499; *Dunn* v. *Railway Co.*, 58 Me. 187; *Coasting Co.* v. *Tolson*, 139 U. S. 551, 11 Sup. Ct. Rep. 653; *Creed* v. *Railroad Co.*, 86 Pa. St. 139.

The appellant also assigned as error the excluding from the evidence of the statement, "I supposed he was a car-repairer." This was made by a brakeman in giving testimony as to seeing the plaintiff on the caboose before the accident, and in assigning his reasons for saying nothing to him. The only purpose this statement could serve would be to excuse the brakeman's own neglect, which could be of no advantage to the defendant. It was therefore immaterial and inadmissible. There are numerous other errors assigned, but we think they are insufficient to disturb the verdict. The judgment is affirmed.

MINER, J., concurred.