### SIMMONS *v.* OREGON RAILROAD COMPANY.

[69 Pac. 440, 1022.]

</div>

CARRIERS—PASSENGER—PAYMENT OF FARE.

1. The payment of a consideration or the possession of a ticket or pass is not necessary to the creation of the relationship of passenger and carrier, so far as relates to an injury received by one who is on a train.

CARRIERS—LIABILITY FOR INJURY RECEIVED ON SPECIAL FREIGHT.

2. Where a railroad company allows passengers to ride on regular freight trains, but not on "extras," and a person in good faith boards a train in fact an "extra," but in all appearances similar to a regular freight, and is allowed by the conductor to ride thereon, he is to be regarded as a passenger to whom the company is liable as a carrier for injuries received while on such train.

LIABILITY FOR INJURY TO EMPLOYE TRAVELING WHILE NOT ON DUTY.

3. An employe of a carrier traveling free because of his employment, either with or without a pass, when his time is his own, and he is occupied with his private business, is a passenger, and entitled to recover for damages caused by the negligence of the carrier's servants ; under such circumstances the traveler is not a fellow servant with the careless employes.

CARRIERS—APPARENT AUTHORITY OF CONDUCTOR OF A SPECIAL FREIGHT.

4. Where a carrier is in the habit of carrying passengers on its freight trains under certain conditions and restrictions, a conductor of such a train is acting within the limit of his apparent authority when he permits a person to board the train and ride thereon, though he really violates the rules in so doing, and the carrier will be liable to such a person, as a passenger, for an injury resulting from the negligence of the train operatives.

CARRIERS—DUTY TO STOP AT SAFE PLACE.

5. A carrier owes a passenger the duty of stopping its train at a place where he can, in the exercise of reasonable care, alight with safety ; and it is not enough to stop at a place not suitable for him to alight, but convenient for its employes to do their work.

MATERIAL AND IMMATERIAL EVIDENCE.

6. Testimony of the conductor of a train on which a passenger was injured that he thought such passenger had alighted is immaterial ; it appearing that he would not have done differently if he had known he was aboard, and that the accident occurred through failure of the engineer to obey signals.

CROSS EXAMINATION—HARMLESS ERROR.

7. Cross-examination is intended to develop more fully matters testified to on direct examination, and will not be permitted to extend to other questions ; but error in this respect will not be cause for reversal where the same witness is afterward called by the cross-examining party, for then an opportunity has been afforded to develop at length the questions excluded before.

From Umatilla: WILLIAM R. ELLIS, Judge.

Action by G. D. Simmons against the Oregon Railroad & Navigation Co., to recover damages for injuries received in a collision on defendant's road. There was a verdict and judgment for plaintiff for $20,700, from which defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Cotton, Teal & Minor* and *Carter & Raley*, with an oral argument by *Mr. William W. Cotton.*

For respondent there was a brief and an oral argument by *Mr. Thomas G. Hailey* and *Mr. Alfred S. Bennett.*

Mr. Chief Justice Bean delivered the opinion.

This is an action to recover damages for personal injuries suffered by the plaintiff through the negligence of the operators of a train upon which he was riding. For some eighteen months prior to the accident he had been employed by the defendant company as a fireman on one of its helper engines at Kamela, a station on the summit of the Blue Mountains. He was paid by the "run," receiving no compensation when not at work. Under his contract of employment the company reserved from each check issued to him for wages forty cents as a hospital fee, in consideration of which it agreed, in case of illness or injury, to provide him with medical services and medicine free, and, as the testimony tended to show, to transport him to and from points on the road where the company provided medical attendance for its employes. On the 17th of May, 1900, being indisposed, he obtained a "lay-off," in order to go to La Grande, a station some 20 miles east of Kamela, to consult the company's physician and obtain medical service. He rode to La Grande on one of the company's trains, without a ticket or pass, and without paying fare, or having his right to travel in this manner questioned. After consulting the physician and transacting some other business in La Grande, he went to the depot, and got aboard the caboose car of what he then supposed was a regular freight train, but which, as a matter of fact, was an extra, although there was nothing in its outward appearance to indicate any difference between it and a regular freight. It was made up as were regular freight trains, and had attached to it a caboose car, fitted up for carrying passengers, like those used by the company on regular freight trains. The conductor was in the car when the plaintiff went aboard, inquired of him where he was going, and the plaintiff told him he was going home. Plaintiff paid no fare, none was demanded of him, nor had he any written evidence of his right to ride, yet the conductor allowed him to do so. When the train reached Kamela, in the course of the work required at that station it became necessary to detach the ca-

boose and rear helper engine from the remainder of the train, and leave them standing on the track until the rest of the train was pulled west beyond the west switch, the purpose being to pick up a nonair car from the west spur, and attach it to the train. In order to do this, it was intended that the rear helper engine should take the caboose, go in on the spur track, pick up the car, and bring it out on the main track, and attach it to the train. When, however, the engine with the caboose reached the west switch, instead of stopping, as it should have done, it was permitted, through the negligence and carelessness of the train employes, to move west on the main track until a collision occurred between the caboose and the main train, thereby severely and permanently injuring the plaintiff, who was then in the caboose.

The rules of the company in force at the time provided that every person riding on its trains must present a ticket or pass or pay fare for each trip, and that conductors must not carry passengers or employes without tickets or passes. Rule 243 provided that "Freight trains will not carry passengers, except as designated in the special rules. Trains so designated will carry employes with passes, and passengers when provided with proper transportation as required by the rules. Employes with passes may be carried on all freight trains between stations at which trains stop." The special rule governing the carrying of passengers on freight trains was as follows: "Passengers presenting permit Form 208, accompanied by proper transportation, may be carried by regular freight trains between points (at) which they stop, subject to rules 218 and 243." Form 208, referred to, contained a written contract, wherein the person accepting the same agreed that the railroad company, in the operation of its freight trains should not be deemed a common carrier of passengers, and should not be liable to the holder as such common carrier. The plaintiff, however, had no knowledge of these rules or requirements, or of the conditions under which the defendant carried passengers on its freight trains. His work was in another department, and he was not called upon, nor was it necessary for him, to

familiarize himself with the rules governing the company's transportation business. About the 1st of January, 1900, the defendant issued and delivered to the division engine foreman at La Grande an employe's pass, No. E17, for ''one fireman,'' good between Kamela and La Grande, which the foreman was authorized to deliver to any fireman that the company might wish to transport between the stations named. In addition to this, such foreman had blank trip passes, which he was authorized to issue to employes going over the road. Employes of the company, however, when known to the conductors, were commonly permitted to travel without a pass or other written evidence of their right to transportation. Plaintiff knew of the existence of pass No. E17, and had used it on one or two occasions, but generally rode without it, and had been told by the person having it in charge that it was not necessary for him to procure it, as he was an ''old man,'' and therefore known to the conductors on the road. The trial resulted in a verdict and judgment in favor of the plaintiff, and the defendant appeals.

There are numerous assignments of error referred to and discussed in the briefs, but they are all grounded, substantially, upon the contention that the relation of passenger and carrier did not exist between the plaintiff and defendant at the time of the injury, and that the defendant was, therefore, not liable to him for an injury received through the negligence of the train operatives. The question thus presented naturally divides itself into two special subjects of inquiry : *first,* whether the conductor of the train upon which the plaintiff was riding had apparent authority to accept him as a passenger, and to create the relationship of passenger and carrier between him and the defendant; and, *second,* if so, whether he is to be regarded as a passenger or an employe at the time of the injury.

1. A passenger is sometimes defined to be a person whom a railway company, in the performance of its duty as a common carrier, has contracted to carry from one place to another, for a valuable consideration, and whom the company, in the performance of the contract, has received at its station, or in its car, or under its care: Patterson, Ry. Acc. Law, § 210.

But the payment of fare or of a consideration for the carriage is not necessary to create that relationship, so far as it is involved in an action for a personal injury received while on the train. Where a person goes aboard a railway train in good faith for the purpose of being carried from one place to another, and is permitted by the conductor to ride, the company is liable, in the absence of a special contract, for an injury arising from the carrier's negligence, if the conductor was expressly or impliedly authorized to bind the company by such permission, even though such person was traveling gratuitously, and the conductor had violated his instructions by allowing him to remain on the train: 2 Shearman & Redfield, Neg. (4 ed.) § 491; Beach, Contrib. Neg. (3 ed.) § 165; 2 Wood, Railroads (Minor's ed.), 1207; *Washburn* v. *Nashville R. Co.* 3 Head, 638 (75 Am. Dec. 784); *Wilton* v. *Middlesex R. Co.* 107 Mass. 108 (9 Am. Rep. 11); *Edgerton* v. *New. York & H. R. Co.* 39 N. Y. 227; *Brennan* v. *Fairhaven & W. R. Co.* 45 Conn. 284 (29 Am. Rep. 679); *Louisville & N. R. Co.* v. *Scott's Adm'r* (Ky.), 56 S. W. 674 (50 L. R. A. 381); *Waterbury* v. *New York Cent. & H. R. R. Co.* (C. C.) 17 Fed. 674, note. The fact, therefore, that the plaintiff was being carried gratuitously is immaterial, if the company accepted him as a passenger, and expressly or impliedly agreed to transport him as such. Nor do we regard as material the question of his inherent right to ride, or whether he should have had a pass or other written evidence of his right to transportation. He was lawfully on the train for the purpose of being carried home, with the consent and by the permission of the conductor. If the conductor had authority to bind the company by allowing him to ride on the train, the relation of passenger and carrier was thus created between him and the company, regardless of the question whether he could have been lawfully ejected from the train or denied the right to ride thereon, unless he is to be regarded as an employe, instead of a passenger.

2. This brings us to the inquiry whether the conductor of the train upon which plaintiff was riding had authority, real or apparent, to create the relation of passenger and carrier be-

tween the company and one riding upon his train. A railway
company may separate its passenger and freight business, pro-
viding certain trains in which people may be carried as passen-
gers, and other trains devoted exclusively to the transportation
of freight. In case of such a complete separation between its
freight and passenger business, the conductor of a freight
train has no implied authority to receive passengers thereon,
or to bind the company by his act in so doing. And, again,
where one gets on a train made up exclusively of cars appro-
priate alone to the carrying of freight, he is, under many of the
authorities, bound to take notice that such train is not intended
for passengers, and, if he rides thereon, even with the consent
and approval of the conductor, he is not entitled to the rights
of a passenger, nor is the company bound to exercise toward
him the same degree of care that would be required of it to-
ward a passenger lawfully traveling on one of its trains: 4
Elliott, Railroads, § 1582; Patterson, Ry. Acc. Law, § 215;
*Eaton* v. *Delaware St. R. Co.* 57 N. Y. 382 (15 Am. Rep. 513);
*Powers* v. *Boston & M. R. Co.* 153 Mass. 188 (26 N. E. 446);
*Texas & Pac. Ry. Co.* v. *Black,* 87 Tex. 160 (27 S. W. 118);
*Atchison, T. & S. F. R. Co.* v. *Headland,* 18 Colo. 477 (33
Pac. 185, 20 L. R. A. 822); *San Antonio, etc. Ry. Co.* v. *Lynch,*
8 Tex. Civ. App. 513 (28 S. W. 252); *St. Louis, etc. Ry. Co.*
v. *White* (Tex. Civ. App.), 34 S. W. 1042; *San Antonio, etc.
Ry. Co.* v. *Lynch* (Tex. Civ. App.), 40 S. W. 633. Where, how-
ever, freight and passenger business is not entirely separated,
but a railway company carries passengers on some of its freight
trains under certain terms and conditions, one who, without
knowledge of the company's regulations to the contrary, gets
in a car attached to a freight train, designed and prepared
for carrying passengers, and is allowed by the conductor to
ride therein, is to be regarded as a passenger, and entitled to
recover for an injury received through the company's negli-
gence, even though the conductor may have been prohibited
by the rules of the company from carrying passengers on that
particular train: Schouler, Bailm. 598; Thompson, Carriers,
344; *Dunn* v. *Grand Trunk Ry. Co.* 58 Me. 187 (4 Am. Rep.

267); *Lucas* v. *Milwaukee & St. P. Ry. Co.* 33 Wis. 41 (14 Am. Rep. 735); *Everett* v. *Oregon S. L. Ry. Co.* 9 Utah, 340 (34 Pac. 289); *Whitehead* v. *St. Louis, I. M. & S. Ry. Co.* 99 Mo. 263 (11 S. W. 751, 6 L. R. A. 409); *St. Joseph & W. R. Co.* v. *Wheeler,* 35 Kan. 185 (10 Pac. 461); *Spence* v. *Chicago R. I. & P. Ry. Co.* (Iowa) 90 N. W. 346.

In *Dunn* v. *Grand Trunk Ry. Co.* 58 Me. 187 (4 Am. Rep. 267), a person entered a saloon car attached to a freight train, and was permitted by the conductor to ride. By a rule of the company, passengers were not allowed to travel on freight trains over a specified portion of its line, and no passengers were to be carried in cars attached to freight trains, "without written authority from the superintendent." It was held that he was lawfully on the train, and that the company was liable for an injury he received through its negligence. The opinion was delivered by Mr. Chief Justice APPLETON, and is a strong and learned exposition of the law upon this subject. In discussing the authority of the conductor and the effect of the rules of the company, he says: "The plaintiff went aboard the freight train, in the saloon car, and was there with the knowledge of the conductor. It was the duty of the conductor to inform him of this regulation, if it was to be enforced, and request him to leave. If no notice was given of this rule, and no request to leave, but instead thereof the usual fare was received, he had a right to suppose himself rightfully on board, and entitled to all the rights of a passenger. * * If, not being rightfully on board, and being advised thereof, the plaintiff neglected or refused to leave, the conductor had a right to remove him, using no more force than was necessary to accomplish that object. The regulations of the defendant corporation are binding on its servants. Passengers are not presumed to know them. Their knowledge must be affirmatively proved. If the servants of the corporation, who are bound to know its regulations, neglect or violate them, the principal should bear the loss or injury arising from such neglect or violation, rather than strangers. The corporation selects and appoints its servants, and it should be responsible for their con-

duct while in its employ. It alone has the right and the power
of removal." And, again: "The plaintiff was not entitled by
law to be carried on the freight train contrary to the regula-
tions of defendant company. They might have refused to
carry him, and have used force to remove him from the train.
Not doing this, nor even requesting him to leave, but suffering
him to remain, and receiving from him the ordinary fare, they
must be held justly responsible for negligence or want of care
in his transportation."

In *Lucas* v. *Milwaukee & St. P. Ry. Co.* 33 Wis. 41 (14
Am. Rep. 735), the company did not carry passengers on its
through freight trains, but its way freight trains were allowed
to carry them. The plaintiff went aboard a through freight
train in good faith, and with the knowledge and consent of the
conductor, supposing it to be one of those that carried passen-
gers. It was held that, as there was nothing in the situation or
condition of the train to indicate that passengers were not car-
ried upon it as well as upon other freight trains, he was en-
titled to the rights of a passenger in respect to an injury re-
ceived by him while on board the train. In discussing the
question as to whether the plaintiff was bound by the rules of
the company and the instructions to the conductor not to take
passengers on his train, Mr. Justice LYON, speaking for the
court, says: "Before the defendant used any portion of its
freight trains as passenger trains also, and while the functions
of the two were kept entirely separate and distinct, the one be-
ing used for the carriage of passengers and the other exclu-
sively for the transportation of merchandise, a person riding
upon a freight train without express authority from some per-
son competent to give it would probably have been unlawfully
on the train, and could not have successfully claimed and en-
forced the rights of a passenger against the defendant. But
since the defendant has authorized the carriage of passengers
upon some of its freight trains, it seems very clear to my mind
that a different rule must be applied. I think that since the
system of carrying passengers on freight trains was adopted
by the defendant, a person who goes upon a freight train in

good faith, supposing it to be also a train for carrying passengers, is entitled to all the rights and remedies of a passenger as against the company, at least until he is informed that he has mistaken the character of the train." And, again: "The conductor of the train in question was the general agent of the defendant for the purposes of operating that train.   As between himself and his employer, he had no authority to receive passengers upon it.   Such want of authority, however, was not known to the plaintiff, or those in charge of him.   They knew that conductors of other freight trains were authorized to receive and did receive passengers on their trains, and believed, as they well might, that the conductor with whom they were about to take passage had the same authority.   Whatever the rule might be were no freight trains of the defendant permitted to carry passengers, it must be held, under the circumstances of this case, that if such conductor directed the plaintiff to go on board the train, and the plaintiff did so, he thereby became a passenger of the defendant, notwithstanding the conductor exceeded his authority.   In other words, such direction, if given. was within the scope of the conductor's employment, and binding upon the defendant, although unauthorized."

In *Everett* v. *Oregon S. L. Ry. Co.* 9 Utah, 340 (34 Pac. 289), a section hand was injured while riding on an extra freight train by authority of the conductor.   Under the rules of the company passengers could be carried on regular, but not on extra, freight trains.   It was held that, as he went aboard the train in good faith, believing he had a right to ride, and was allowed to do so by the conductor, the company was liable to him as a passenger, although the train was one that under the rules of the company was not allowed to carry passengers. In speaking of his rights and of the duties of the conductor, the court say: "He was there (in the caboose car) with the knowledge of the conductor who had charge of the train.   If this was an extra train, on which passengers were not allowed to ride, it was the conductor's duty to inform him, and request him to leave, in accordance with the regulations of the defendant; and, if plaintiff had disregarded such request, the con-

ductor could have lawfully removed him, using no more force than was necessary for that purpose. If the conductor failed to do this, it must be presumed that the plaintiff was rightfully there. A railroad company has a right to designate which of its freight trains shall carry passengers and which shall not. It has a right to make regulations, and, when so made, they are binding on its servants. Those riding on its trains are not presumed to know them. If its servants neglect or violate them, and because of such neglect or violation injury results to strangers, the company will be liable.'' In *Whitehead* v. *St. Louis, I. M. & S. Ry. Co.* 99 Mo. 263 (6 L. R. A. 409, 11 S. W. 751), a lad fourteen years of age was invited by a brakeman and permitted by the conductor of a special through freight train to ride free thereon, and while so riding was injured. Under the rules of the company, passengers were permitted to be carried on local freight trains, but not on special through trains. It was held, however, that the company was liable for the injury received by the boy through the negligence of the operators of the train. In the course of the opinion it is said: ''The evidence shows that defendant carried passengers for hire on its local freight trains but not on through freight trains. The train in question was a special through train. The rules of defendant forbade the carriage of passengers on this and like through trains. There is nothing in the outward appearance of the cars or caboose to indicate any difference between through and local freight trains, though the latter are designated on time cards displayed at stations.'' And, again: ''Now, in this case the conductor had entire charge of the train. In its management he acted for and represented the defendant. It was a part of his duties to see that persons did not ride upon it, either with or without the payment of fare. How, therefore, can it be said his act in allowing the boy to ride upon the train was beyond or outside the scope of his employment? It was an act directly within the line of his duty. He made breach of his duty towards his master, but that is a matter of no consequence here. To all outward appearances,

as well as in point of fact, he was master of the train. The defendant, therefore, cannot escape liability in this case on the ground that the conductor had no authority to permit the boy to ride on the train.''

In *St. Joseph & W. R. Co.* v. *Wheeler*, 35 Kan. 185 (10 Pac. 461), a boy was injured while riding without the payment of fare in the caboose of a construction train, by the invitation of the conductor, but against the rules of the company. It was held that the company was liable, although under its rules the conductor was instructed not to permit passengers to ride upon his train. The court say: ''It is contended that Frank Wheeler was an intruder upon the train, for whose injury no liability could arise against the company, for two reasons: *first,* that the conductor had instructions not to carry passengers on the construction train; and, *second,* that from the nature of the business which was being done with the train, and also its equipment, it was apparent that the company did not permit passengers to be carried thereon. Neither of these circumstances will defeat a recovery in this case. It is true the conductor had been instructed not to allow persons to ride upon his train as passengers, but Frank Wheeler had no knowledge of such instructions. He had asked and obtained permission to ride upon the train. It was within the range of the employment of the conductor to grant such permission. He had entire charge of the train, and was the general agent of the company in the operation of the train. As he was the representative of the company, his act, and the permission given by him, may properly be regarded as the act of the company. If Wheeler had furtively entered upon the train, or had ridden after being informed that the rules of the company forbade it, or had obtained permission only from the engineer, brakeman, or some other subordinate employe, the argument made by counsel might apply.''

Under the doctrine of these cases it was within the apparent authority of the conductor of the train upon which the plaintiff was riding at the time of his injury to allow persons to ride thereon, and thereby to create the relation of passenger and

carrier between such persons and the company. The rules of the company permitted the carrying of passengers upon some freight trains, and under certain conditions. It is true that under these rules the defendant may not have been a common carrier of passengers on any of its freight trains, in the sense that one had a lawful right to ride there without complying with the conditions imposed. Nor were such conditions and limitations illegal or void. But, nevertheless, the company did assume to carry such passengers as complied with its rules on certain of its freight trains. It was the duty of the conductors of its trains to enforce these rules. For that purpose they stood in the place and as the representatives of the company, and by their acts the company is bound. The rules regulating the carrying of passengers on freight trains were unknown to the plaintiff. He had no knowledge of their existence, and did not know, when he entered the train, that he was violating them. He entered the car in good faith, supposing it to be one in which passengers were allowed to ride, and was permitted by the conductor to remain therein. He therefore, under the law, became a passenger, and entitled to the rights of such, even if he paid no fare, unless the fact that he was an employe of the company would change that relationship.

3. This brings us to the other inquiry. There are many authorities holding, and it may for the purpose of this case be conceded, that an employe of a railway company, traveling free, as a part of his contract of service, to and from his work, or in immediate connection with his employment, is not a passenger, but an employe, and a fellow-servant with those in charge of the train: *Vick* v. *New York C. & H. R. R. Co.* 95 N. Y. 267 (47 Am. Rep. 36) ; *Gillshannon* v. *Stony Brook R. Corp.* 10 Cush. 228 ; *Seaver* v. *Boston & M. R.* 14 Gray, 466 ; *Gilman* v. *Eastern R. Corp.* 10 Allen, 233 (87 Am. Dec. 635) ; *Ryan* v. *Cumberland Val. R. Co.* 23 Pa. 384 ; *McNulty* v. *Pennsylvania R. Co.* 182 Pa. 479 (38 Atl. 524, 38 L. R. A. 376, 61 Am. St. Rep. 721) ; *Ionnone* v. *New York, N. H. etc. R. Co.* 21 R. I. 452 (79 Am. St. Rep. 812, 44 Atl. 592, 46 L. R. A.

730) ; *Higgins* v. *Hannibal & St. J. R. Co.* 36 Mo. 418. But, where an employe is traveling on his own private business, when his time is his own, even though he travels on a pass or ticket received on account of his employment, or is permitted to travel without a pass or ticket by reason of his employment, he is a passenger, and not a servant: *Doyle* v. *Fitchburg R. Co.* 162 Mass. 66 (37 N. E. 770, 25 L. R. A. 157, 44 Am. St. Rep. 335) ; *Dickinson* v. *West End St. Ry. Co.* 177 Mass. 365 (83 Am. St. Rep. 284, 59 N. E. 60) ; *State to use* v. *Western Maryland R. Co.* 63 Md. 433 ; *Ohio & M. R. Co.* v. *Muhling*, 30 Ill. 9 (81 Am. Dec. 336) ; *Denver, etc. Rapid Transit Co.* v. *Dwyer*, 20 Colo. 132 (36 Pac. 1106) ; *Williams* v. *Oregon S. L. Ry. Co.* 18 Utah, 210 (54 Pac. 991, 72 Am. St. Rep. 777) ; *O'Donnell* v. *Alleghany Val. R. Co.* 59 Pa. 239 (98 Am. Dec. 336) ; *McNulty* v. *Pennsylvania R. Co.* 182 Pa. 479 (38 Atl. 524, 38 L. R. A. 376, 61 Am. St. Rep. 721) ; *Whitney* v. *New York, N. H. etc. R. Co.* 102 Fed. 850 (43 C. C. A. 19, 50 L. R. A. 615) ; *Rosenbaum* v. *St. Paul & Duluth R. Co.* 38 Minn. 173 (36 N. W. 447, 8 Am. St. Rep. 653) ; *Washburn* v. *Nashville R. Co.* 3 Head, 638 (75 Am. Dec. 784) ; *Louisville & Nashville R. Co.* v. *Scott's Adm'r*, 22 Ky. Law Rep. 30 (56 S. W. 674, 50 L. R. A. 381) ; *Chattanooga Rapid-Transit Co.* v. *Venable*, 105 Tenn. 460 (58 S. W. 861, 51 L. R. A. 886).

The distinction between the two classes of cases is aptly illustrated by the Massachusetts decisions referred to. In the Gillshannon, Seaver, and Gilman cases cited by the defendant, the injured party at the time he received the injury was being transported in immediate connection with and as a part of his employment, while in the Doyle and Dickinson Cases, cited by the plaintiff, he was traveling on his own business, although with the permission of the company, or on transportation obtained from it, as an incident to and part compensation for his services. In the Doyle Case the plaintiff's intestate, who lived some distance out of Boston, was employed in the freight department of the defendant in that city, at a daily wage. Each month he was furnished by the company, as a part of his compensation, with a ticket, good for sixty-two rides be-

tween his home and Boston during the period for which it was issued.   He was entitled to ride on this ticket whether he was going to or from his work or traveling solely for his own private interests or pleasure.   One evening while returning home from a business or pleasure trip to Boston, he was killed through the negligence of the defendant.   The court held, distinguishing the case from some earlier decisions, that he was a passenger, and not an employe.   In the Dickinson Case the plaintiff was an employe of a street railway company.   By a rule of the company all employes in uniform were entitled to ride at any time free.   After the plaintiff had finished his work for the morning of a certain day, he got aboard one of the cars of the defendant for the purpose of going to his dinner, and while riding in such car was injured.   It was held that, although he was an employe, riding free under a rule of the company, he was nevertheless to be regarded as a passenger at the time of his injury, the same as those who had paid fare. Now, under this doctrine, it is apparent that the plaintiff cannot be regarded as a servant or employe of the company at the time of his injury.   He had on the previous day received a lay-off and was not engaged in the service or on the business of the company at the time of the accident.   It is true he was returning home, expecting to go to work the next day; but, nevertheless, on the day in question his time was his own, and he owed the defendant no duty until he actually resumed his work.   He was not travelling to or from his work, or in immediate connection with it.   It was no part of his duty as a servant of the defendant to take the train on which he was riding for the purpose of resuming his employment, or in the performance of any duty he owed the company.   Under his contract of employment, he was paid by the run, and received no compensation when not at work; so that at the time he was injured he was not in the service of the company, and was receiving no wages or compensation from it.   We are of the opinion, therefore, upon the law and the facts, that the conductor of the train upon which the plaintiff was riding had ap-

parent authority to receive him thereon as a passenger, and that he must be regarded as a passenger. The judgment of the court below is affirmed.                                    AFFIRMED.

<div align="center">Decided 25 August, 1902.

ON PETITION FOR REHEARING.</div>

MR. JUSTICE BEAN delivered the opinion.

4. The point is earnestly pressed that because, under the rules of the defendant, passengers were carried on freight trains only on the conditions and limitations set forth in Form No. 208, the conductors of such trains had no authority, real or apparent, to bind the company by receiving any person on their trains as a passenger save on the conditions named; in other words, the effect of the argument, as we understand it, is that the limitations on the authority of the conductor are binding on all persons riding on his train, whether known to them or not. Such a doctrine is, in our opinion, opposed to the authorities, and contrary to the rules governing the relation of principal and agent. It is common learning that a principal is bound, not only by the acts of his agent within the actual authority conferred upon him, but within his apparent authority, and that he cannot hold one out to the world as possessing authority over a given subject, and deny liability for his acts by relying upon some secret instructions not known to persons dealing with him. When, therefore, the defendant permitted and allowed persons to be carried on its freight trains at all, and under any conditions, as part of its general business, it necessarily invested the conductor of such train with authority to pass upon the question of whether one applying to ride should be allowed to do so, and to determine who should and who should not ride thereon. For that purpose, he stood in the place of the company, as its agent, and had authority to act for it. He was an agent invested with actual authority to receive and carry persons on his train on certain conditions, and, if he violated his instructions, and carried unauthorized persons ignorant of the limitations on his authority, the com-

pany is, nevertheless, liable for an injury received by them through the negligence of the operators of the train. Counsel argues that a person riding on a freight train in pursuance of the rules, and under contract with the company, is not a passenger, and therefore defendant is not a carrier of passengers on such trains, and as a consequence the conductors thereof have no authority, actual or apparent, to receive persons in that capacity, or bind the company by so doing. The rules of defendant providing for and regulating the carriage of persons on freight trains designate them as "passengers," and, we think, manifestly properly so. Generally speaking, a passenger is one who travels in a public conveyance, by virtue of a contract, express or implied, with the carrier; and a carrier of passengers is one who undertakes to carry persons from place to place gratuitously, or for hire: 5 Am. & Eng. Ency. Law (2 ed.), 480. It is obvious that in this sense a person riding on a freight train of defendant, in pursuance of its rules and by its consent is a passenger. It is true he may be a passenger with restricted rights, as against the company, because of the terms of the contract under which he is being carried, but he is none the less a passenger. He is not a licensee, trespasser, servant, or employe of the company, but a passenger, and entitled to all the rights of such, except as restricted by the terms of his contract, and the character of the train upon which he is riding. It is, therefore, within the general scope of the employment of the conductor of a freight train, under the rules of the company, to receive and carry passengers thereon, and we must adhere to the view heretofore expressed, that his act in so doing is binding on the company, although he may have violated his instructions or its rules and regulations.

We do not deem it necessary to go with counsel through an exhaustive and critical review of the authorities, but since so much reliance seems to be put on *Powers* v. *Boston & M. R. Co.* 153 Mass. 188 (26 N. E. 446), it is well to observe that in that case defendant was not carrying persons on its freight trains as a business. Moreover, the plaintiff, who had formerly been

employed by the defendant, had received and receipted for books containing the rules of the company, and at the time of his injury was riding in a car "which he could not have failed to know was not intended or adapted for the use of passengers, but solely for the accommodation of the defendant's employes engaged in the operation of its trains," which fact of itself, was sufficient, under many of the decisions, to charge him with knowledge of the limitations on the authority of the conductor. In the case at bar, on the other hand, defendant assumed to carry on its freight trains all persons who complied with certain conditions, as a part of its general transportation business; and the car in which defendant was riding at the time of his injury was fitted up for the carriage of passengers, and was such as the defendant used on its regular freight trains for that purpose. It is therefore distinguishable from the Powers and all other similar cases, and, in our opinion, is in principle the same as the Lucas, Everett, Spence, and other cases cited.

5. There are several assignments of error not particularly noticed in the opinion, although substantially covered by it, to which our attention is again called. It is said the court erred in modifying the instruction requested by the defendant, to the effect that if at Kamela the train was stopped at the proper place to enable the employes to do their work, and while so stopped the plaintiff had ample time and a reasonable opportunity to leave the train, but failed to do so, he could not recover, by inserting after the word "time" the words "suitable and safe place." There was no error in this. If the plaintiff was a passenger, or entitled to the rights of such, whether in the full sense of that term or not, the company owed him the duty of stopping the train at a place where he could, in the exercise of reasonable care, alight with safety; and this duty was not discharged by stopping at a place convenient for the employes to do their work, and giving him time to leave the train there, unless it was a suitable place for him to do so.

6. Again, it is urged that the court erred in not allowing

the conductor of the train to state what his belief was as to
whether plaintiff was aboard when the caboose passed the
station going west.   The conductor's belief upon this subject
had no bearing upon the question of the negligence charged
or the plaintiff's rights.   The conductor testified that the ac-
cident occurred through the failure of the engineer to observe
or obey signals, and that, even if he had known the plaintiff
was on the car, he would not have stopped it at the station to
permit him to alight, because it was not customary to do so.
His belief, therefore, did not affect his conduct, and was wholly
immaterial.

7. Error is also predicated on the fact that the court would
not permit the defendant, on the cross-examination of the con-
ductor, to show, as it made an offer to do, that before the train
left La Grande plaintiff applied to him for permission to ride,
and was told that he could not do so unless he had a permit or
pass; and that afterwards the plaintiff was asked for trans-
portation, and, as he had none, was told that he must get
off at Hilgard, a station east of Kamela.   The witness' tes-
timony in chief was confined to what occurred at Kamela, and
to the fact that the last time he saw plaintiff was about 2½
miles east thereof, when he woke him up, and told him the
train was approaching the station.   Nothing was said by him
as to how plaintiff came to be aboard the train, or by what au-
thority he was riding thereon, or what occurred at La Grande,
and therefore the testimony sought to be elicited by the cross-
examination was not so intimately connected with the examina-
tion in chief as to make the ruling of the court error.   If the
offer to prove was true, the testimony would no doubt have
beeen very material, but it was a part of defendant's case in
chief, and could not be made out on the cross-examination of
plaintiff's witness.   The defendant subsequently called the
conductor as its own witness, and examined him at length, but,
as no such proof was made or offered, the ruling on this ques-
tion of cross-examination, even if it had been error, would
hardly justify a reversal of the judgment.

REHEARING DENIED.