The opinion of the court was delivered by
Fenner, J.
This is an action by a father and mother to recover damages for the killing of their minor son by a servant of the defendant company.
The discrepancy between the facts alleged in the petition and those appearing on the evidence is very wide.
*479 The petition discloses that, on May 6, 1889, their son, “took passage for Point Houmas, La., on a train of said company, and duly paid his fare to the conductor of the train;” that at Burnside station, while the train was stopping, he descended from the train; that while thus being at said station, an alarm was raised that a freight car of the train was being broken open and robbed by thieves; that the conductor, brakeman and other employees ran to said car to drive off and capture the-thieves, and that the conductor or one of the other employees, mistaking the son of petitioners for one of the thieves, shot him with a pistol, etc.
The evidence discloses a very different state of facts.
Plaintiffs’ case rests entirely upon the testimony of a single witness, a colored youth named Esteve, who is contradicted on nearly every important point by other witnesses, and who contradicted himself by inconsistent statements made at different times.
His story is that he and the boy, Candiff, got on top of a car of a freight train of defendant at New Orleans to ride to Kenner; that they gave one of the brakemen of the train 15 cents to let them ride; that before reaching Kenner they called the brakeman, and wishing to go further, gave him a dollar; that, when the train stopped at Burnside station, they descended to ease their limbs; that, as they were so, quietly standing there, no alarm or excitement existing, the conductor came up to them and shot Candiff, and then putting his pistol at witness’ face accused him of breaking into the car, and ordered him to get back into the car. He says distinctly that there was no alarm or excitement, and he heard nothing about a car being broken into until after the shooting.
It is very clear, under this statement, even if true, that Candiff and Esteve were not passengers. They were simply engaged in stealing a ride on defendant’s train with the corrupt connivance of a brakeman.
The brakeman of a freight train has no implied authority to bind the company by contracts of passage.
The train had a conductor, as Esteve admits he knew, who had charge of the train, and who alone, if any one, could have accepted these parties as passengers. Reavy vs. R. R. Company, 40 An. 33; Patterson Railway Acc. Law, Sec. 209.
But the brakeman denies the whole of Esteve’s story; says he never consented to their riding, and was not aware that they were *480 on the car until just before the train stopped at LaPlace Station, when he discovered them standing on the draw-heads between two cars, and that, at LaPlace, he ordered them off the train, and supposed they had left.
The conductor says that when the train was stopping at Burnside, as he walked along, he heard talking in one of the box cars; that, anticipating trouble, he stepped into the station agent’s office and borrowed a pistol for self-protection; that he then walked to the car and discovered that it had been broken open by cutting the seal and knocking off the cleat, and that some persons had been in the car; that it was night and he could not see the persons; that about that time one of the brakemen came up; that then two men jumped out of the ear and started to run; that he told them to stop and they did not stop; and that then the brakeman fired and shot one of them, who proved to be Candiff.
Whether we accept the version of Esteve or that of the conductor, it is plain that the railway company can not be held liable.
We have already said that the relation of carrier and passenger did not exist, and defendant’s liability vel non is governed by the law of master and servant.
If Esteve’s version be true, the shooting of Candiff was as coldblooded a murder as Was ever committed. It presents the conductor-as coolly walking up to a man standing quietly, doing and saying nothing, and shooting him down without a word. No stretch of the doctrine that masters are responsible even for the torts of their servants when done within the scope of their employment and in the exercise of the functions in which they are employed, can make it cover such an act as this.
Admitting that the conductor is charged with the duty of protecting the cars and contents confided to his care, and that acts done in execution of such charge are within the scope of his employment, and admitting that he supposed Candiff had broken into the car, and shot him for that reason, in what manner was such shooting, under such circumstances, necessary or conducive to the protection of the property?
If, on the other hand, we accept the conductor’s version, we have the case of a man detected in the crime of breaking open a car in the night-time, who attempts to escape by running away, who, *481 when ordered to stop by parties in charge of the property, refuses to do so, and who is then shot by one of said parties.
It is not necessary to justify the act of the brakeman or to decide whether or not it was within the scope of his employment, in such manner as to make the company responsible. It is very clear that, in such a transaction, the party detected in the commission of a crime, and shot while attempting to escape arrest, would be in a case of such contributory fault that the law would afford him no relief in a civil action for damages.
Counsel for defendant suggests the very apt analogy of a night watchman employed to guard a house. He detects burglars in the house, who attempt to escape, and on their failing to halt when called to do so, he shoots one of them. Could the burglar shot be listened to in an action of damages?
On the other hand, if the watchman had discovered that a burglary had been committed, and, some time afterward, seeing two persons standing quietly in the street, whom he supposed to be the burglars, he walks up to them and shoots one of them without a word, who proves to be innocent, would his employer be liable?
These questions seem to us to answer themselves.
It is, therefore, adjudged and decreed, that the verdict and judgment appealed from be annulled and set aside, and that there be now judgment in favor of defendant, rejecting the demands of the plaintiffs at their costs in both courts.