The opinion of the court was delivered by
On the 11th day of August, 1891, the defendant in error, as plaintiff, filed his complaint in the district court for Logan county to recover damages for personal injuries received by him at Guthrie, Oklahoma, while riding from Purcell, Indian Territory, to Guthrie, in a box car in one of defendant's freight trains.
Plaintiff claimed in his petition that he was a passenger, and that he was jerked and thrown from the car in question by reason of the negligence of the defendant's servants. The defendant plead by a general denial, and by the allegation that the plaintiff was not a passenger but was a trespasser on the train, and that the injuries were received in consequence of his own negligence in jumping from the train while it was in motion. To the answer of defendant the plaintiff replied, denying generally the allegations of the answer, and setting up a specific denial of the matters set up in the answer as a defense. The case was tried on the 26th and 27th days of October, 1893, and resulted in a verdict for the plaintiff for the sum of five thousand dollars.
It was alleged by the plaintiff that on the 3d day of February, 1891, at about 8 o'clock P. M., the defendant, in consideration of the sum of one dollar, then and there paid to its agent, a brakeman on one of its freight trains, by the plaintiff, undertook and agreed, as a common carrier, to transport and convey the plaintiff from the town or village of Purcell to the town or village of Guthrie, as a passenger, and the plaintiff, being so directed by one of the agents of the *Page 45 
defendant, thereupon entered one of its freight cars, to be conveyed from the town or village of Purcell to the town or village of Guthrie; that while being so conveyed in said freight car the plaintiff saw the conductor of the freight train to which the freight car was attached, and that said conductor was fully cognizant of the fact that plaintiff and other persons were being conveyed on said train, and also that plaintiff and "many other persons had upon various occasions been transported upon defendant's freight train, by and with consent of, and by paying fare to, the conductor thereof."
It was further alleged that the plaintiff, while he was such passenger, at the town or village of Guthrie, and without negligence or fault on his part, but while he was standing in or near the door of the said freight car preparatory to getting off the same, was, through the unskillfulness, carelessness, negligence and fault of defendant and its agents in causing the said train to greatly slacken its rate of speed and then to suddenly start forward at a much more rapid rate, without allowing him sufficient time to safely get off, thrown from said car and run over by a portion of said train. With their special verdict the jury returned into court special findings, as follows:
1. "Ques. When was the plaintiff injured? Ans. February 3, 1891."
2. "Q. Was the train upon which plaintiff took passage from Purcell to Guthrie a freight train or a passenger train? A. Freight train."
3. "Q. If you answer question two, that the train was a freight train, did such freight train have a caboose car attached? A. Yes."
4. "Q. In what kind of a car did the plaintiff take passage? A. Box car."
5. "Q. If, in answer to the last question, you say the plaintiff took passage in a box car, please state if such *Page 46 
box car was provided by the company for the accommodation of passengers? A. No."
6. "Q. Was the train on which the plaintiff took passage allowed, by the rules of the company, to carry passengers? A. No."
7. "Q. Who was the conductor of the train? A. E. P. Anderson."
8. "Q. If, in answer to the last question, you say that E. P. Anderson was the conductor of the train, you may state whether or not he was in charge of the train? A. Yes."
9. "Q. Did the conductor know that the plaintiff was on the train? A. We do not know."
10. "Q. Who was the engineer in charge of the engine that was pulling the train? A. Spunaugle."
11. "Q. Did the engineer know that the plaintiff was on the train before he was injured? A. No."
12. "Q. Who was the fireman of the engine that was pulling the train? A. J. W. Cooper."
13. "Q. Did the fireman know that the plaintiff was on the train until after he was injured? A. No."
14. "Q. Did the plaintiff pay Harry Hill one dollar to ride from Purcell to Guthrie? A. Yes."
15. "Q. Was Harry Hill a brakeman on the train on which the plaintiff took passage? A. Yes."
16. "Q. Did Harry Hill, as such brakeman, have any authority to collect the dollar from plaintiff? A. No."
17. "Q. What did Harry Hill do with the dollar so collected from the plaintiff? A. He 'devied' with Reynolds."
18. "Q. What was the regular passenger fare from Purcell to Guthrie? A. One dollar and ninety-four cents."
19. "Q. Did the plaintiff know that the train on which he took passage was not a passenger train? A. Yes."
20. "Q. Did the plaintiff know that the car in *Page 47 
which he took passage was not provided by the company for carrying passengers? A. Yes."
21. "Q. Did the plaintiff know that the train on which he took passage was not allowed to carry passengers? A. No."
22. "Q. Did the plaintiff jump from the train while in rapid motion? A. No; he was thrown off."
23. "Q. Did the plaintiff lean from the door of the box car in which he was riding, so that the stopping of the train threw him out and caused the injury? A. Yes."
24. "Q. Would the plaintiff have been injured had he remained back in the car until the train stopped? A. No."
25. "Q. Would the plaintiff have been injured had he taken passage in the caboose attached to the train? A. We do not know."
26. "Q. Did the plaintiff have sufficient time at Oklahoma City to leave the box car and go back and get into the caboose attached to the train? A. We do not know."
At the time the jury returned their special findings into court, the defendant objected to the reception of the verdict of the jury until special interrogatories numbered 9, 25 and 26, should be answered by the jury, and that the jury be required to answer said findings with more definiteness and certainty, which objection and request were by the court overruled, and duly excepted to by the defendant at the time, and the court received the verdict, to which reception the defendant then and there excepted.
This action of the court constitutes the first assignment of error. It is argued by the defendant in error that the special interrogatories submitted by counsel for plaintiff in error were not properly a part of the record in the case in this court, and were never in fact submitted to the jury by the trial court, and that *Page 48 
counsel for plaintiff in error never made the proper request to have the same submitted to the jury.
The provisions of the code of civil procedure in force at the time and for the purposes of the trial of the cause, were those of the Statutes of Oklahoma of 1890, which were adopted from the Statutes of the state of Indiana, and are identical with the provisions of the code of civil procedure of that state. The decisions of the supreme court of the state of Indiana are, therefore, followed, and this court will be governed by them in determining whether error was committed in refusing to submit special interrogatories to the jury requested by the plaintiff in error, and in determining whether said special interrogatories were at any time or in any manner submitted to the jury, and whether the court erred in refusing to require the jury to answer the interrogatories numbered 9, 25 and 26 with a greater degree of certainty, and in overruling the motion of plaintiff in error for said special findings.
It is provided in article 18, entitled "Trial by Jury," § 28, (4574), Oklahoma Statutes of 1890, that:
"In all actions, the jury, unless otherwise directed by the court, may, in their discretion, render a general verdict or special verdict; but the court shall, at the request of either party, direct them to give a special verdict in writing upon all or any of the issues; and in all cases, when requested by either party, shall instruct them, if they render a general verdict, to find specially upon material questions of fact, to be plainly stated in writing. This special finding is to be recorded with the verdict."
Upon the trial the following instruction was requested by the plaintiff in error, to-wit:
"The court, at the request of the defendant, has submitted to you certain special questions for you to answer, and you are instructed that it is your duty to answer each of said questions fairly as you shall find *Page 49 
the truth to be, under the evidence, without regard to your general verdict."
This instruction was by the court refused, to which exception was duly taken.
It is the contention of the defendant in error that the party requesting of the court that the jury shall be instructed to find specially upon material questions of fact, that they shall do so upon condition that "they render a general verdict." This proposition is well founded. The statute is plain. The court cannot be required to instruct the jury that it is their duty to answer special interrogatories upon the evidence "without regard to their general verdict." The statute plainly requires that the court shall, in all cases, when requested by either party, instruct them, "if they render a general verdict," to find specially upon material questions of fact. Special interrogatories must be proposed, if at all, in connection with the general verdict, and not "without regard to it." It would not have been proper for the court to give the instruction in the terms proposed. An instruction to the jury to "answer each of said questions, without regard to the general verdict," would have included the instruction to return answers to the special interrogatories, whether they elected to return the general verdict or not. The request was properly refused.(Killian et al. v. Eigenman, 57 Ind. 480; Lake Erie West. R.R. Co. v. Fix, 88 Ind. 381; Hadley et al. v. Hadley,82 Ind. 75; Taylor v. Busk, Executor, 91 Ind. 234.)
Notwithstanding the fact that the court refused to submit the special interrogatories to the jury, with the instructions proposed, "without regard to their general verdict," yet special interrogatories were, in fact, delivered to the jury and answered, special findings being made thereon, and returned into court in connection with their general verdict. Were the special interrogatories delivered to the jury and the *Page 50 
special findings returned thereon, properly or improperly submitted?
The court, having refused to give the interrogatories to the jury as requested, and having yet delivered them to the jury, it would appear that the court, having discharged its duty in rejecting their submission to the jury, under an instruction which would have been improper, did, thereupon, submit them to the jury with proper instructions.
It is the duty of the court to give general instructions to the jury, and the special interrogatories having been tendered with an instruction which the court would not have been justified in giving, we think the presumption would properly arise that they were given to the jury, under the head of general instructions, at the proper time, which it is the duty of the court to give to the jury. (Frank v. Grimes,105 Ind. 546; Scott v. Smith, 70 Ind. 298.)
But the fact of their proper submission to the jury does not depend upon this presumption. The record, upon page 130, discloses the fact that
"The said jury, together with said general verdict, returned the interrogatories submitted to the said jury to be answered by them, in connection with their general verdict, and which said interrogatories, together with the answers of the jury thereto, are in words and figures following, to-wit:
And again on page 17 of the record:
"The jury returns into court with their verdict and answers to the special questions of fact submitted to them."
And again on the same page:
"And the jury return into court the answers to the special questions of fact submitted to them, which said special questions of fact and the answers of the jury thereto are as follows, to-wit:"
And on page 16, that:
"The court, at the request of the defendant, submits to the jury certain special questions of fact for *Page 51 
said jury to answer and return to the court with their general verdict, and thereupon the cause is submitted to the jury and they retire to deliberate upon their verdict and the said special questions of fact."
Which entries were from the journal signed by the judge, and approved over the signature of counsel for both plaintiff and defendant. It thus appears by the record that the court, at the request of one of the parties, sent the interrogatories to the jury, and it makes no difference that the direction by which they were given to the jury was not in writing. The statute makes no such requirement. (C. C. C. I. R. W. Co. v. Bowen,Admr., 70 Ind. 478; Stanley v. Southerland, 54 Ind. 339;McAllister v. Mont, 73 Ind. 559; Lawler v. McPleer,73 Ind. 577; Weistman v. Wiley, 85 Ind. 33.)
It is, however, contended by the defendant in error that the approved statement of the record contains "all of the oral rulings of the court incident to the trial of the cause, motions, instructions and rulings of the court of every kind and character," and shows that no such request was made to the court prior to the time the court instructed the jury and the argument and submission of the cause to the jury.
In this condition of the record we must find that while the certificate to the case-made expressly states that it contains all of the oral rulings of the court incident to the trial of the cause, and it does not expressly appear in the record when the instruction referred to was given to the jury, that yet the certificate also states that "the case-made contains a true, complete and full transcript of the record of the cause," among which "true, complete and full" matters, are the statements in the record that "the court, at the request of defendant, submits to the jury special questions of fact for said jury to answer and return with their general verdict."
We find that the special interrogatories were properly *Page 52 
submitted to the jury, and that the findings returned on them are all regularly and properly a part of the record.
It is, therefore, proper for this court to consider upon this assignment of error whether the trial court erred in overruling the motion of the plaintiff in error to require the jury to answer with more definiteness and certainty the special interrogatories numbered nine, twenty-five and twenty-six. Testimony was adduced upon the points to which the special interrogatories were directed, and the answers of the jury to each of them was, "we do not know." It may have been evasive and equivocal. It would not have been error for the court to have remanded the jury with directions to make specific answers to the special interrogatories referred to. But it would not do, in the presence of testimony not positive or conclusive in its character, to presume that the jury would, upon being remanded, have given or have been able to give, with more certainty, a more definite answer to either of these interrogatories. It cannot be said that plaintiff in error was damaged by the refusal of the court to remand the jury, and require it to answer the questions as required.
It has been repeatedly determined that the failure to answer questions, or the rendition of evasive and equivocal or uncertain answers, not stating the result of the evidence upon the point positively, either in the affirmative or in the negative, simply implies a denial of adequate proof having been produced to the jury during the trial, of the existence of the fact upon which the question or questions has been proposed. The fact upon which the jury has declined to answer has thus not been made out by proof. If, therefore, for example, as to special interrogatory number nine, "Did the conductor know that the plaintiff was on the train?" the answer of the jury was, "We do not *Page 53 
know." The result of the question and the answer given by the jury was that the fact as to whether the conductor knew that the plaintiff was on the train or not, was not proven, and so, for all the purposes sought by the plaintiff, by the assertion of the fact that the conductor did know that the plaintiff was on the train, the answer referred to is equivalent to the statement that the conductor did not know that the plaintiff was on the train. And so with the answers to the other interrogatories. (Noakes v. Morey, 30 Ind. 103; Ogle v. Dill,61 Ind. 438; Bunton v. Rose, 16 Ind. 209; Johnson v. Putnam,95 Ind. 57; Cleveland, Etc. R. R. Co. v. Asbury, 120 Ind. 289;Morrow v. Commissioners Saline Co. 21 Kan. 504; U. P. Ry. Co.v. Shannon, 38 Kan. 476.)
A failure to find upon some fact or issue involved, is equivalent to finding against the party holding the affirmative upon such fact or issue. (Henderson v. Dickey, 76 Ind. 264;Parmenter v. State, 102 Ind. 90; 3 N.E. Rep. 382; Glantz v.City of South Bend, 106 Ind. 305; Railway Co. v. Hart,119 Ind. 273.)
The plaintiff in error has suffered no loss by the ruling of the court, and we do not think that such ruling of the court is reversible error in its behalf.
 SECOND ASSIGNMENT OF ERROR.
The defendant (plaintiff in error) thereupon moved the court to render judgment in favor of the defendant and against the plaintiff upon the answers of the jury to the special questions of fact submitted to the jury by the court, at the request of the defendant, the general verdict to the contrary notwithstanding, for the reason that the said special findings of fact show that the plaintiff is not entitled to recover. Which motion was, upon the 3d day of November, 1893, overruled, to which ruling of the court the defendant at the time excepted.
Included in the special findings of the jury were the *Page 54 
statements that the plaintiff was injured on the 3d day of February, 1891; that the plaintiff took passage in a box car, which was not provided by the company for the accommodation of passengers, that a caboose car was attached to the train, and that passengers were by the rules of the company not allowed upon said train as passengers. That the conductor, Anderson, was in charge of the train. The jury stated that they "did not know" whether the conductor knew that the plaintiff was on the train or not, which statement is equivalent to the statement that the conductor did not know that the plaintiff was on the train. The presence of the defendant in error was also unknown to the engineer and fireman; that the regular fare from Purcell to Guthrie was one dollar and ninety-four cents; that the plaintiff paid the brakeman, Harry Hill, on the train upon which he took passage, a dollar to ride from Purcell to Guthrie; that said brakeman had no authority to collect the dollar from the plaintiff, and that he "devied" the dollar with Arnolds, another brakeman on the train. The jury also stated that the plaintiff knew that the train on which he took passage was not a passenger train, and that the car in which he took passage was not a car provided by the company for carrying passengers; that the plaintiff did not know that the train on which he took passage was not allowed to carry passengers; that the plaintiff did not jump from the train while it was in rapid motion, but was thrown off. They found that the plaintiff leaned from the open door of the box car in which he was riding, so that the stopping of the train threw him out and caused the injury, and that he would not have been injured had he remained back in the car until the train stopped.
To the answers, respectively, whether the plaintiff would have been injured had he taken passage in the caboose car attached to the train, and also whether *Page 55 
the plaintiff had sufficient time at Oklahoma City to leave the box car and go back and get into the caboose attached to the train, the jury responded that they did not know.
It is well settled under the laws of the state of Indiana, under which the case was tried below, as also of the state of Kansas, under the provisions of whose code of civil procedure the case is now being heard, that if, upon finding a general verdict in favor of the plaintiff, the special findings be yet in favor of the defendant, so that it is evident that the jury has misapplied the law to the facts, the general verdict will be set aside and judgment will be given on the findings over the verdict. It will be sufficient in this case if any single controverted fact which it is necessary for the plaintiff to establish in order to recover be found in favor of the defendant, the defendant will be entitled to judgment notwithstanding the general verdict.
It has been, in a variety of forms, declared by the supreme court of Indiana to be the law, that
"The general verdict will be set aside where there is an irreconcilable conflict with the conclusion reached in the general verdict."
And that,
"The antagonism must be apparent upon the face of the record, beyond possibility of being removed by any evidence legitimately admissible under the issue, before the court can be successfully called upon to direct judgment in favor of the party against whom the general verdict has been rendered."
And that,
"The special finding must be irreconcilably inconsistent with the general verdict before the latter can be set aside and the former substituted in its place." (Indianapolis v. Cook,99 Ind. 10; Woolen v. Wishmier, 70 Ind. 108; Lassiter v. Jackmon,88 Ind. 118; Smith v. Zent, 59 Ind. 362; Gripton v. Thompson,32 Kan. 367; Amadon v. Gafe, 24 Ind. 128.)
In support of its contention it is argued by plaintiff *Page 56 
in error (1) that defendant in error was a trespasser upon the train in question, and could exact no duty of the defendant except not to wilfully or wantonly injure him, which duty it is not claimed by the pleadings that the defendant violated, and (2) that the plaintiff was guilty of contributory negligence in boarding a box car instead of taking the caboose, and (3) that the plaintiff was guilty of contributory negligence in placing himself in an attitude of exposure to danger in leaning out the car door, from which the findings of the jury state that he was thrown off.
1. The jury have found as facts that the fare paid by the defendant in error was not the regular passenger fare from Purcell to Guthrie, one dollar and ninety-four cents, but one dollar, and that this dollar was paid to Harry Hill, a brakeman on the train, who had no authority to collect it from the plaintiff. If the brakeman had no authority to collect the fare from the plaintiff, he had no authority to bind the company or make any contract on its behalf. There are certain facts in railroad passenger and freight traffic of which the public is required to take notice. One is that a passenger train is for the purpose of carrying passengers; another is that a freight train is for the purpose of carrying freight. One proposing to be carried as a passenger upon a freight train, must advise himself upon what terms the company will contract to carry him as a passenger, and with whom he may make the contract. The courts will require that the traveling public shall take notice that freight cars are not intended for the carriage of passengers, that when passengers are accepted upon freight trains, the caboose attached to the train is the car in which passengers must place themselves unless otherwise directed by a person having charge of the train; that the railroad company places a conductor in charge of each train, who has charge of its management in all *Page 57 
respects, and with whom persons proposing to be carried as passengers must contract, and under whose direction they must act, subject to the rules of the company; that in order to the manipulation of the mechanical movement of the train, it is necessary that the railroad company should employ an engineer, whose duty it is to manage the engine, a fireman, whose duty it is to attend to the fires, and a brakeman, whose employment and duty it is to attend to the brakes upon the train. A person proposing to become a passenger must deal with the conductor who has charge of the train, and not with the subordinate employes of the train. It is not within the scope or authority of the engineer, fireman or brakeman to collect fare or bind the company, and the defendant in error had no right to suppose that the brakeman, Harry Hill, could bind the company by the agreement by which the defendant in error undertook to make the payment which he did. Upon his having undertaken to procure transportation upon the freight train of the plaintiff in error, as a passenger, it was the duty of the defendant in error to have informed himself of the rules and regulations of freight trains, intended primarily for the carriage of freight, and to have informed himself, by applying to the conductor who had charge of the train, and so ascertain upon what conditions he would be accepted and permitted to ride upon the train as a passenger. He failed to do this, and failed to become a passenger entitled to that high degree of care which railroad companies are held to owe to those who are accepted as, and whom it agrees to carry as, passengers. The defendant in error in undertaking to negotiate with the brakeman failed to put himself in charge of the carrier so as to raise the relation of carrier and passenger, and was, in the view of the law, as is claimed by plaintiff in error, a trespasser, entitled only to the duty from the railroad *Page 58 
company not to wantonly or wilfully injure him. (Files v.Railroad Co., 149 Mass. 204, 21 N.E. Rep. 311; Railway Co. v.Ligthcap, 34 N.E. Rep. 243; Railway v. Hatton, 60 Ind. 13;Railroad Co. v. Mezum, 60 Ind. 533; C. E. R. R. Co. v. Field,
34 N.E. Rep. 407; Lillis v. Railway Co., 64 Mo. 464; RailroadCo. v. Van Houton, 48 Ind. 190; Stone v. Railway Co., 47 Ia, 82; Hibbard v. Railway Co., 15 N.Y. 456; Frederick v. RailwayCo., 36 Mich. 342; Ray on Personal Injuries. 272; Candiff v. L. N. O. T. R. R. Co., 42 La. 477; Mason v. Railroad Co.27 Kan. 83; Pierce on Railroads, 330 p. 474.)
2. But it is contended by plaintiff in error that even if the plaintiff was a passenger, he was guilty of contributory negligence in riding in the box car. The defendant in error entered the box car and took his position there of his own choice. In order to entitle himself to the high degree of care which the carrier of passengers must exercise, the passenger must go into, and remain in, the car which is provided for passengers. It has been repeatedly held, that if the passenger takes any other position upon the train, of his own choice, either on the engine, on the cow-catcher, tender, baggage car, platform, or other car, he is guilty of such contributory negligence as, if he should be injured, would deprive him of the right to recover, even though the negligence itself might not have been contributed to by the injury. It has, in some cases, been held that if another place on the train, aside from the car provided for passengers, and which is assumed to increase the danger of travel by rail, has been taken by the passenger by the authority or consent of the conductor or other agent in charge of the vehicle or train, that the carrier may be liable. This doctrine has been upheld by some courts, and denied by others. But it does not apply in cases where the passenger assumes a dangerous and improper place at the instance, and with the consent of, one of the *Page 59 
subordinate employes of the carrier company, such as an engineer, fireman or brakeman of a railway train. Even if the contract of carriage is complete and has been made by the proposed passenger with one authorized to make it on behalf of the company, it is a contract for carriage in the car provided for passengers, if there be one upon the train. The additional danger incident to transportation on freight trains, requires that the passenger should exercise a correspondingly higher degree of care. It has, in fact, been held that the act of riding upon a freight train, in violation of the company's rules, of which the proposed passenger is required to inform himself, if he proposes to make a contract of carriage for himself by that means, is itself such contributory negligence as will preclude the recovery, except for wanton or wilful injury. We shall accordingly hold that the defendant in error was, by the act of going into the box car on the freight train of the defendant at the invitation of the brakeman and without the knowledge of the conductor, guilty of such contributory negligence as would preclude his recovery in this case, and would of itself require that the general verdict should be set aside and that the judgment be reversed. (Carrol v. InterstateRap. Trans. Co., 107 Mo. 653; Rucker v. Mo. Pac. R. R. Co., 61 Tex. 499;Houston T. C. R. R. Co. v. Clemens, 55 Tex. 88;Penn. R. R. Co. v. Langdon, 1 Am. Eng. R. R. 92; Kentucky,etc., R. R. Co. v. Thomas, 1 Am. Eng. R. R. 81; Doggett v.Ill. Cen. R. R. Co., 34 Ia. 284; Peoria R. R. Co. v.Lane, 83 Ill. 448; Waterbury v. N.Y. C. . H. R. R. Co., 17 Fed. Rep. 683; Higgins v. Cherokee R. R. Co., 73 Ga. 139.)
(3) It is, in the third place, contended by the plaintiff in error under the present assignment of error, that the defendant in error was guilty of negligence in leaning out of the open door of the car, and thereby contributed to the injury for which he here *Page 60 
claims damages. The jury found in response to special interrogatories 23 and 24, that the plaintiff leaned from the open door of the box car in which he was riding, so that the stopping of the train threw him out and caused the injury, and that he would not have been injured had he remained back in the car until the train stopped. It has been repeatedly, and so far as we have been able to find, uniformly held, that the position of the passenger is in the passenger car while the train is in motion, and in the seat provided for him. If the passenger places himself in an unusual position, which enhances the danger, he will be guilty of contributory negligence. The dangers naturally incident to travel by rail are greater on freight than on passenger trains, and call for a correspondingly higher degree of care on the part of the passenger. It is held that one who is a passenger in a caboose attached to a freight train, leaves his seat and while standing up in the car, is thrown down and injured, is guilty of contributory negligence in so standing up, if he would have escaped the injury by keeping his seat. It has been held that a passenger on a freight train getting up from his seat and walking to the door of the car to see if he was to get off there, while a coupling was being made causing a violent jar which threw the plaintiff to the floor and injured him, was guilty of contributory negligence, and could not recover. It has been held that one seated in a passenger train on the arm back of one of the seats with his elbow on the back of the seat, and who was injured by a heavy shock given the car by coupling, was precluded from recovering by his contributory negligence. It was also held that there is danger in standing near an open side door of a caboose when the train is in motion, and that a person of ordinary prudence will abstain from doing so, and that if he does do so, he is guilty of contributory negligence, *Page 61 
and cannot recover. And it is a general rule that if a passenger puts his head or elbow or any part of his body out of the window of the car in which he is riding, he is guilty of contributory negligence, and he cannot recover for any injury received in consequence thereof. We must, therefore, sustain the contention of the plaintiff in error upon this point also, and hold that the defendant in error, even if he had been successful in sustaining the contention that he was a passenger, was guilty of contributory negligence in going to the open side door of the box car, by reason of which, as has been found by the jury, he was injured. (Harris v. Hannibal St. J. R. R. Co. Mo. 27, A. E. R. R. Cases, 216; Smith v.Richmond Danville R. R. Co. N.C. 34, A. E. R. R. Cases 557;Thompson v. Duncan, 76 Ala. 334; N. W. R. R. Co. v. Ferguson,79 Va. 241; Beach on Contributory Negligence, § 155.)
We, therefore, find upon the points enumerated that the defendant in error was a trespasser upon the train in question, and entitled to no duty from the defendant except not to wilfully or wantonly injure him, which is not charged in the petition, and that he was guilty of contributory negligence in boarding the box car, and in placing himself in a position of special danger at the car door while the train was in motion, that he is not entitled to recover, and that the trial court should have, upon the motion of plaintiff in error, set aside the general verdict and rendered judgment in favor of the defendant below.
It is unnecessary to consider the other assignments of error.
It is therefore ordered that the case be reversed and remanded with instructions to enter judgment for the defendant in the court below.
Dale, C. J., not sitting; all the other Justices concurring. *Page 62