## CHICAGO, R. I. & P. R. CO. v. SHADID.

No. 7604.—Opinion Filed July 11, 1916.

Rehearing Denied September 12, 1916.

(159 Pac. 913.)

1. **Carriers—Carriage of Passengers—Rules of Carrier.**

One who is on a freight train with the knowledge and consent of the agents having charge of it cannot be said to be there wrongfully, and the company owes him a duty although he is there against its rules.

2. **Same—Evidence—Jury Question.**

Where a person, paying less than full fare, has ridden in a freight car with the consent of the brakeman and conductor in charge of the train, and upon reaching a station is informed by the brakeman that he cannot be carried further, but must get a ticket, and is directed to the depot for that purpose, and in following such direction is injured, held, that whether or not such person is a trespasser is a question to be left to the jury under proper instructions.

(Syllabus by Edwards, C.)

Error from District Court, Canadian County; John W. Hayson, Judge.

Action by Ed Shadid, a minor, by his next friend, against the Chicago, Rock Island & Pacific Railway Company, a corporation. There was a judgment for plaintiff, and defendant brings error. Affirmed.

R. J. Roberts, C. O. Blake, W. H. Moore, and K. W. Shartel, for plaintiff in error.

Geo. H. Giddings, E. J. Giddings, and J. T. Dortch, for defendant in error.

Opinion by EDWARDS, C. For convenience, the parties will be referred to as plaintiff and defendant, according to their position in the lower court. At the time of bringing his suit, the plaintiff was a minor of about the age of 19 years, a native of Syria, having been in this country about 4 years. The suit is for the recovery of damages for personal injuries. From the evidence on the part of

the plaintiff, it appears: That the plaintiff was seeking employment, and for that purpose was traveling through the country from Memphis towards the harvest fields of Oklahoma, and while in a restaurant at Haileyville talked with a brakeman of the defendant company, concerning transportation from that point to Shawnee. The brakeman agreed to take him to that point for 50 cents, and later came back and took the plaintiff to a freight train which had a caboose attached, in which were people. There the conductor of the train asked the brakeman where he was taking plaintiff, and was informed by the brakeman that he was going to put plaintiff in a car, whereupon the conductor told the brakeman to take the plaintiff down there and come back at once. That plaintiff was placed in a freight car with about ten other persons, after which the train proceeded upon its way. At Stuart, a distance of about 34 miles, the freight train upon which the plaintiff was riding was sidetracked to permit a passenger train to pass, and while there the same brakeman told plaintiff he could not carry him any farther, and that plaintiff would have to get a ticket. Plaintiff thereupon got off, and the brakeman told him to walk down the main line a little piece and then go down to the depot. That plaintiff started to walk down the main line as directed by the brakeman, walked a little piece and saw a light, but thought it was the headlight of the train upon which he had been riding, and, after walking a short distance, and while from 1,200 to 1,500 feet from the depot, was struck by the passenger train of the defendant, coming from the opposite direction, and seriously injured. There was no crossing or usually traveled way at the point where the plaintiff was injured, and the right of way on each side was fenced, and just west of that point some 40 or 50 feet was a curve in the track, around which the passenger train came before striking the plaintiff. That the plaintiff heard no bell ringing or whistle blowing before being struck by the defendant's passenger train. That he acted in good faith, and thought the brakeman had a right to carry him. There is a sharp conflict between the evidence of plaintiff and the brakeman of the freight train and the engineer of the passenger train on many points, and also a sharp conflict between the evidence of the plaintiff and that of one Sanders, a traveling companion of the plaintiff, who, according to his own testimony, was with him during all the time he was upon the train of defendant and at the time of the injury. The defendant contends that the plaintiff was a trespasser at the time of his injury, and that as

such the defendant owed to him only the ordinary care and duty not to willfully and wantonly injure him, or that, if he be classed as a licensee, he could only be such by invitation and the defendant would owe him the duty only of using ordinary care for his safety, and that no want of ordinary care is shown on the part of the defendant railway company. That the doctrine of last clear chance is inapplicable. The theory upon which the plaintiff proceeds is not entirely clear, but the contention is that the status of the plaintiff, as passenger, trespasser, or licensee, was a question for the jury, and was submitted under proper instructions, and that the verdict, being supported by sufficient evidence, should not be disturbed.

The determination of the question whether or not the relation of passenger and carrier existed between the plaintiff and defendant in this case is a very close and difficult one, and is, to some extent, at least, a question of fact. This question the court submitted to the jury under the following instructions:

"(10) You are further instructed that if after a fair and impartial consideration of all of the testimony in this case you believe that the plaintiff has established, by a preponderance of the testimony, that he secured his passage upon the freight train, paying the brakeman therefor by and with the consent of the conductor, and that this transaction was in the utmost good faith upon his part, the plaintiff in that event would not be a trespasser within the meaning of the law.

"(11) But, upon the other hand, if after a fair and impartial consideration of all of the testimony in this case you find that the plaintiff was seeking to ride on the defendant's freight train, or was riding on said freight train without paying therefor, or that he paid the brakeman for riding on said freight train knowing that the said freight train did not carry passengers, or that he knew or had reason to believe the method which he was employing to ride said train was not the usual, ordinary, and proper method of securing passage, or was not permitted by the defendant, then and in that event you are instructed he would be a trespasser under the law."

The question of contributory negligence was also submitted to the jury under proper instructions.

The Supreme Court of the Territory of Oklahoma, in the case of A., T. & S. F. R. Co. v. Johnson, 3 Okla. 41, 41 Pac. 641, says:

"The jury have found as facts that the fare paid by the defendant in error was not the regular passenger fare from Purcell to Guthrie $1.94, but $1, and that this dollar

was paid to Harry Hill, a brakeman on the train, who had no authority to collect it from the plaintiff. If the brakeman had no authority to collect the fare from the plaintiff he had no authority to bind the company or make any contracts on its behalf. There are certain facts in railroad passenger and freight traffic of which the public is required to take notice. One is that a passenger train is for the purpose of carrying passengers; another is that a freight train is for the purpose of carrying freight. One proposing to be carried as a passenger upon a freight train must advise himself upon what terms the company will contract to carry him as a passenger, and with whom he may make the contract. The courts will require that the traveling public shall take notice that freight cars are not intended for the carriage of passengers; that when passengers are accepted upon freight trains, the caboose attached to the train is the car in which passengers must place themselves unless otherwise directed by a person having charge of the train; that the railroad company places a conductor in charge of each train, who has charge of its management in all respects, and with whom persons proposing to be carried as passengers must contract, and under whose direction they must act, subject to the rules of the company; that in order to the manipulation of the mechanical movement of the train, it is necessary that the railroad company should employ an engineer, whose duty it is to manage the engine, a fireman, whose duty it is to attend to the fires, and a brakeman whose employment and duty it is to attend to the brakes upon the train. A person proposing to become a passenger must deal with the conductor who has charge of the train, and not with the subordinate employes of the train. It is not within the scope or authority of the engineer, fireman or brakeman to collect fare or bind the company, and the defendant in error had no right to suppose that the brakeman, Harry Hill, could bind the company by the agreement by which the defendant in error undertook to make the payment which he did. Upon his having undertaken to procure transportation upon the freight train of the plaintiff in error, as a passenger, it was the duty of the defendant in error to have informed himself of the rules and regulations of freight trains, intended primarily for the carriage of freight, and to have informed himself, by applying to the conductor who had charge of the train, and so ascertain upon what conditions he would be accepted and permitted to ride upon the train as a passenger. He failed to do this, and failed to become a passenger entitled to that high degree of care which railroad companies are held to owe to those who are accepted as, and whom it agrees to carry as, passengers."

Again, in the case of St. L. & S. F. R. Co. v. Nichols, 39 Okla. 522, 136 Pac. 159, Mr. Commissioner Brewer states the law, as follows:

"After securing the shipping contract referred to, the plaintiff loaded his horse into a car and put his feed and water bucket therein so as to give the horse care and attention. He then presented himself in the caboose for passage on the same train, and exhibited his contract to the conductor in charge of the train. He had no notice from the company, its station agent or the conductor, that the train did not carry passengers, nor that he was not entitled to be carried thereon free. He was not asked for fare, but his presence and right to passage were acquiesced in. No objection was raised, and the conductor in charge of defendant's train very likely supposed, as plaintiff did, that he had a right to go on the train. But it is vehemently urged that the train did not carry passengers, and that the rules of the company did not allow persons to ride on it, and that the conductor had no authority to permit it, and his acquiescence amounted to nothing. This argument is based on the fact that the freight charged was for the weight of the horse at so much per hundredweight. It is admitted that, if the charge had been at a carload rate, the plaintiff would have been entitled to free transportation and to passage on that train. It is probably true that under the rules of the company the plaintiff was not entitled to free passage, but it is not shown that he knew, or that a word was said to him by any one, about such rules or regulations. And the excerpts from the shipping contract, and much else that has been said on this point, is not for the purpose of showing that he was entitled to free passage, or in fact to passage at all, but to show that from the contract and the conduct of the company's agents he had a reasonable and well-grounded right to believe that he was entitled to passage on that particular train; that he acted in good faith; and that under the circumstances, if he did not in fact have such right, it was the duty of the company to so inform him, which was not done. We think that, assuming that the contract did not entitle plaintiff to free passage, and this train did not ordinarily carry passengers, and that the conductor was without authority to agree to his passage, yet that under the circumstances the plaintiff had the right to, and it was perfectly reasonable for him to suppose that the conductor was acting within his powers and within the general scope of his employment. In other words, that it was within the apparent authority of the conductor of the train to allow plaintiff to ride thereon, and thereby to create the relation of passenger and carrier between him and the company. This case rests on the apparent or implied authority of defendant's agent in accepting him as a passenger and the good faith of the plaintiff in becoming such. Of course an intruder or trespasser, or one who surreptitiously, fraudulently, or deceitfully gains his presence on a train cannot thereby become a passenger. Nor can he become such through collusion or illegal contrivance with

the train crew, but none of these things are even claimed here."

In the Nichols case, just quoted, the question as to whether or not plaintiff was a passenger was one to be submitted to the jury was not mentioned, but the courts of other states have held that such question should be left to the jury. In the case of Bugge v. Seattle Electric Co., 54 Wash. 483, 103 Pac. 824, it is held:

"Whether a passenger on a street car which reached a trestle that it could not cross by reason of a washout, was a trespasser in walking across the trestle, depending on whether she was invited there by the conductor, or told to wait for a car, and not go on the trestle, as to which the evidence was conflicting, was a question for the jury"

—the court further saying:

"The court was requested to instruct the jury that the respondent was a trespasser upon the trestle and that appellant owed the duty of reasonable care only to avoid injuring her after she was discovered. Whether she was a trespasser or not depended upon the fact whether she was invited there by the conductor, as she testified, or whether she was notified to await a car and not go upon the trestle. This question was therefore for the jury, and they were properly instructed upon it."

In the case of Chicago Terminal Trans. Co. v. Kotoski, 199 Ill. 383, 65 N. E. 350, the court says:

"The appellant asked the court to instruct the jury that 'the plaintiff, while upon the trestle, bridge, or viaduct of the defendant, was a trespasser thereon,' which it refused and it is insisted that such refusal was error. We do not think so. Whether he was a trespasser or not was a question of fact for the jury under proper instructions and the court, at the instance of the defendant, told the jury 'that a trespasser is one who goes upon the property of another without the consent of the owner thereof,' and, further, that 'if the jury believe from the evidence that the plaintiff went upon the trestle bridge, or viaduct of the defendant without the consent of the defendant, then the plaintiff was a trespasser thereon'; 'that if the defendant was the owner of a trestle, bridge, or viaduct, and if the plaintiff went upon such trestle, bridge, or viaduct without the consent of the defendant, then the plaintiff was a trespasser thereon'; and that, 'as a matter of law, conductors and brakemen in charge of a train of a railroad company are not presumed to have authority to license or permit any person to go upon the private property of the railroad company outside of its station or station ground; and, if the jury believe from the evidence that any conductor or brakeman in the employ of the defendant told the plaintiff that he might use the right

of way, bridge, viaduct, or trestle of the defendant for his convenience in reaching a pleasure resort more than one mile distant from the railroad station, such statement of the conductor or brakeman gave no authority to the plaintiff to go thereon, unless it be shown that such conductor or brakeman had authority to give such permission.' What more could it ask on the question of the plaintiff being a trespasser, and what more could the court have fairly told the jury on that subject?"

In the case of Alabama G. S. R. Co. v. Coggins, 88 Fed. 455, 32 C. C. A. 1, by the Circuit Court of Appeals, before Taft and Lurton, Circuit Judges, the opinion by Taft, it is held:

"Plaintiff, an employe of a telegraph company, whose line extended along the railroad, was traveling in the caboose of a freight train to a point where repairs were to be made. Near an intermediate station the train stopped at the usual place for the alighting of passengers, which was some 1,500 feet from the station proper. Plaintiff alighted, and, according to the testimony in his behalf, started to walk to the station, to see if there was any telegram for him from his employer, going by the only practicable way, which lay between the train track and a side track. The evidence for defendant was that plaintiff had no business at the station, and was merely loitering between the tracks. He was struck while on a cut-off track by a car which the trainmen were switching to the side track. Held, that the question whether, at the time, he was entitled to the degree of care due a passenger, or merely to that due a stranger on the tracks, was properly left to the jury, under proper instructions."

In other cases, nothing is said about submitting the question as to the status of the injured person to the jury, but it is held that where he acts in good faith in taking passage and with the knowledge and consent of the conductor, although without right on the part of the conductor to give such consent, he is not the trespasser.

In the case of St. Joseph & W. R. Co. v. Wheeler, 35 Kan. 185, 10 Pac. 461, the authorities are reviewed at some length and under the facts of that case, the court said:

"It is contended that Frank Wheeler was an intruder upon the train, for whose injury no liability could arise against the company for two reasons: First, that the conductor had instructions not to carry passengers on the construction train; and, second, that from the nature of the business which was being done with the train, and also its equipment, it was apparent that the company did not permit passengers to be carried thereon. Neither of these circumstances will defeat a recovery in this case. It is true, the conductor had been instructed not to allow per-

sons to ride upon his train as passengers, but Frank Wheeler had no knowledge of such instruction. He had asked and obtained permission to ride upon the train. It was within the range of the employment of the conductor to grant such permission. He had entire charge of the train, and was the general agent of the company in the operation of the train. As he was the representative of the company, his act, and the permission given by him, may properly be regarded as the act of the company. If Wheeler had furtively entered upon the train, or had ridden, after being informed that the rules of the company forbade it, or had obtained permission only from the engineer, brakeman, or some other subordinate employe, the argument made by counsel might apply."

In the case of Simmons v. Oregon R. Co., 41 Or. 151, 69 Pac. 440, 1022, it is held:

"A passenger is sometimes defined to be a person whom a railway company, in the performance of its duty as a common carrier, has contracted to carry from one place to another, for a valuable consideration, and whom the company, in the performance of the contract, has received at·its station, or in its car, or under its care. Patt. R. Acc. Law, par. 210. But the payment of fare or of a consideration for the carriage is not necessary to create that relationship, so far as it is involved in an action for a personal injury received while on the train. Where a person goes aboard a railway train in good faith for the purpose of being carried from one place to another, and is permitted by the conductor to ride, the company is liable, in the absence of a special contract, for an injury arising from the carrier's negligence, if the conductor was expressly or impliedly authorized to bind the company by such permission, even though such person was traveling gratuitously, and the conductor had violated his instructions by allowing him to remain on the train. 2 Shear. & R. Neg. (4th Ed.) par. 491; Beach, Cont. Neg. (3d Ed.) par. 165; 2 Wood, R. R. (Minor's Ed.) 1207; Washburn v. Railroad Co. [3 Head, 638] 75 Am. Dec. 784; Wilton v. Railroad Co., 107 Mass. 108, 9 Am. Rep. 11; Edgerton v. Railroad Co., 39 N. Y. 227; Brennan v. Railroad Co., 45 Conn. 284, 29 Am. Rep. 679; Railroad Co. v. Scott's Adm'r [108 Ky. 392], 56 S. W. 674, 50 L. R. A. 381; Waterbury v. Railroad Co. (C. C.) 17 Fed. 675, note. The fact, therefore, that the plaintiff was being carried gratuitously is immaterial, if the company accepted him as a passenger, and expressly or impliedly agreed to transport him as such."

In the case of Whitehead v. St. L., I. M. & S. R. Co., 99 Mo. 263, 11 S. W. 751, 6 L. R. A. 409, it is held:

"Now, in this case the conductor had entire charge of the train. In its management he acted for and represented the defendant. It was a part of his duties to see that persons did not ride upon it, either with or without the payment of fare. How, therefore, can it be said his act in allowing the boy to ride upon the train was beyond or outside the scope of his employment? It was an act directly within the line of his duty. He made breach of his duty towards his master, but that is a matter of no consequence here. To all outward appearance, as well as in point of fact, he was master of the train. The defendant, therefore, cannot escape liability in this case on the ground that the conductor had no authority to permit the boy· to ride on the train. It also follows from what has been said, as well as from the authorities cited, that the defendant did owe a duty to the boy. It owed a duty to him even on the theory that he was not in the full sense of the term a passenger. The instruction given goes no further than to require of defendant ordinary care, and of this defendant ought not to complain. The authorities cited go far to show that the case might have been submitted to the jury on the theory that the boy was entitled to all the care of a passenger; but, as instructions were not given on that theory, we need say no more upon this question."

In the instant case the court by his instructions required that in seeking passage, plaintiff acted in the utmost good faith, and that, having the consent of the conductor as a condition precedent to his right to recover, and the jury were further told that if plaintiff was upon the train without paying fare, or if he had paid the brakeman, knowing or having reason to believe that the method employed was not usual, ordinary, and proper, or was not permitted by defendant, then plaintiff would be a trespasser under the law, and that if plaintiff was a trespasser, he could not recover unless seen in a place of danger by defendant's engineer before he was struck without such engineer doing all in his power to avoid striking him. To our mind, the instructions fairly submit the issue to the jury, and we must presume that the jury made their findings and returned their verdict honestly.

Under the facts in this case, the plaintiff, with others in the freight car with him, was informed by the brakeman that he could not carry him any farther, and that he would have to get off and get a ticket, and was by the brakeman directed to go down the track to the depot. This was in the night time, about the hour of 4:30 a. m., and about 1,400 feet from defendant's depot. The plaintiff was not warned of any danger in going down the track toward the depot, or that any train was about to pass, and the plaintiff, in following the instructions of the brakeman, sustained the injuries complained of. Upon a consideration of all the authorities and the peculiar facts and circumstances developed

in this case, and taking into consideration the age of the plaintiff and the fact that he had been in America but a comparatively short time, we believe that the expulsion of the plaintiff from the train of the defendant, in the night time, in strange surroundings, and in a place of danger, with directions from one in apparent authority to pursue a certain course to its depot, without any warning that a train was about to pass, was such negligence on the part of the employes of the defendant railway company as will make it liable regardless of whether or not he was, in the full sense of the term, a "passenger."

The judgment will be affirmed.

By the Court: It is so ordered.