PEOPLES CHECKER CAB COMPANY, a
corporation, and Harlan G. Andrew,
Plaintiffs in Error,

v.

George A. DUNLAP, Jr., Defendant in
Error.

No. 37373.

Supreme Court of Oklahoma.

Feb. 26, 1957.

Hudson, Hudson & Wheaton, W. F. Kyle, Tulsa, for plaintiffs in error.

Burt, Seigel & Franklin, Tulsa, for defendant in error.

PER CURIAM.

This action was brought by George A. Dunlap, Jr., to recover for personal injuries suffered in a collision between a taxicab owned and operated by the defendant, Peoples Checker Cab Company, a corporation, driven at the time of the accident by the defendant, Harlan G. Andrew, and an automobile driven by the defendant, Bobby Gene Shook. The collision in which plaintiff was injured occurred at a street intersection in the City of Tulsa. Plaintiff was riding in the taxicab.

The defendants, Peoples Checker Cab Company and Harlan G. Andrew, appeal from the judgment entered in the trial court on a jury verdict awarding recovery to plaintiff in the sum of $2,966. For convenience, we shall refer to the cab company as the defendant company, Andrew as the driver, and Dunlap as the plaintiff.

Assignments of error are argued under two propositions. First, that the court erred in instructing the jury as a matter of law that the plaintiff was a fare-paying passenger, to whom defendants owed the highest degree of care. And, secondly, that the court erred in overruling defendants' demurrer to the evidence and in denying their motion for an instructed verdict.

The instruction complained of reads as follows:

"You are instructed that the relationship of passenger and common carrier existed between the plaintiff and the defendant, and that, therefore, the defendant owed to plaintiff the duty owed by a common carrier to a fare paying passenger, and in this connection you are instructed that under the laws of the State of Oklahoma, a carrier of persons for reward must use the utmost care and diligence for their safe carriage, provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill.

"Given, excepted to by defendant, exceptions allowed.

"Leslie Webb, Judge."

Whether or not this instruction was properly given under the evidence relating to the circumstances of plaintiff's presence in the taxicab is the basic consideration of this appeal. If, as contended under the first proposition, there was error, such alone is sufficient to require reversal. Consideration of the second proposition would then be unnecessary. However, since a taxicab company is a "common carrier for hire" and required to exercise a very high degree of diligence in matters affecting the safety of its passengers; Yellow Cab Operating Co. v. Robinson, 187 Okl. 669, 105 P.2d 535; A & A Taxicab Co., Inc., v. Bass, 177 Okl. 248, 58 P.2d 567, the sufficiency of the evidence to support plaintiff's claim for negligence tested under the instruction for the degree of care required, correctly given, would vary considerably from that required if plaintiff was an intruder or trespasser. Accordingly, our first determination is to be made on the question raised as to the correctness of the instruction under the evidence on that point.

There was only one material variance between the testimony of the plaintiff and the driver as to the facts involved in plaintiff's entering the cab for transportation. This transaction, with the controverted point, may be narrated as follows: Plaintiff, on the night of the collision, was a driver for the defendant company; he had put his cab in a garage and checked out for the day; Andrew, a driver for the defendant company, was nearby in his cab and plaintiff, according to his testimony, requested that he be taken to his home on payment of fifty cents at that time and an additional fifteen cents the following day, which would be full payment of the proper fare for the trip; the driver's testimony (which constitutes the variance) was that an agreement was made for a "flat fare" of fifty cents; that nothing was said about an additional amount; he knew it wasn't "exactly right" to accept a flat fare but had picked up other drivers "once in a while" on such fare, although the practice was against the company's rule requiring that the cab meter be placed in operation and the fare recorded paid; the driver was paid fifty cents by plaintiff when he entered the cab; the driver had not ended his day's driving by checking out, and upon plaintiff's entry into the cab placed his cab meter in operation by pulling down the "flag" which turned on lights on the cab top showing the cab to be in use; the driver's arrangements as to employment with the defendant company involved the payment of a monthly rental on his cab; all fares received by the driver were his own under the arrangement; he made no accounting to the company as to the amounts received in fares and only reported the number of passengers. The driver was proceeding from the point where plaintiff engaged passage to plaintiff's home when the collision occurred.

It is urged in support of the first proposition that plaintiff contracted for transportation for a flat fee which was in violation of company rules and city ordinances, and that whether or not plaintiff promised an additional sum was immaterial. The issue, it is claimed, "Is whether the plaintiff can evade the rules and regulations laid down by making a private contract with an individual employee and still impose upon the cab company the duty of exercising toward him the same degree of care required

to be exercised toward a regular passenger who pays the full fare". Three cases of this jurisdiction are cited in support of the position taken, that the issue stated should be determined in defendant's favor, and that there being some disagreement in the testimony, the trial court should have "at the very least", submitted the issue to the jury for its determination.

In the first case, Atchison, T. & S. F. R. Co. v. Johnson, 3 Okl. 41, 41 P. 641, the plaintiff therein was riding in a freight car on a freight train under an assumed right secured by payment of an amount, less than the passenger train fare, to the brakeman. Under the conclusions reached by the Territorial Court that the traveling public must take notice that freight cars are not intended for the carriage of passengers, and that the railroad company places a conductor in charge of each train, with full management thereof in all respects, and with whom persons desiring to travel as passengers must contract, it was said that the plaintiff had no right to suppose that the brakeman could bind the company, by making the payment he made as fare, for his passage on the train. Plaintiff in that case was held to have failed to put himself in charge of the carrier so as to raise the relation of carrier and passenger.

In the second case, St. Louis & S. F. Ry. Co. v. Nichols, 39 Okl. 522, 136 P. 159, the plaintiff had presented himself in the caboose of a freight train whereon he had contracted for shipment of a horse. On examination of the shipping contract he was permitted by the conductor of the train to ride without payment of fare, although it did not appear that under the rules of the company plaintiff was entitled to free passage or that under the circumstances the conductor was authorized to permit passengers to ride on the train. This court held that it was within the apparent authority of the conductor to allow plaintiff to ride thereon and thereby to create the relation of passenger and carrier between him and the defendant company. We pointed out, however, that if plaintiff had been an intruder or trespasser, or one

who had surreptitiously, fraudulently or deceitfully gained his presence on the train, he could not have become a passenger.

In the last of the three cases cited, Chicago, R. I. & P. Ry. Co. v. Shadid, 60 Okl. 188, 159 P. 913, 916, we had occasion to summarize in some detail the rulings of various jurisdictions on the question arising in the previous two cases, and the particular factual situation arising in that case. We think our conclusions there reached support the trial court in the case at bar. Basically, our holding in the Shadid case was that where the injured plaintiff "acts in good faith in taking passage and with the knowledge and consent of the conductor, although without right on the part of the conductor to give such consent, he is not the trespasser." In support of this determination, we referred to the conclusions reached by the Kansas Court in St. Joseph & W. R. Co. v. Wheeler, 35 Kan. 185, 10 P. 461, that although the conductor had instructions not to carry passengers, and that from the nature of the train it was apparent that the company did not permit passengers thereon, neither of such circumstances would defeat a recovery; it being within the range of the employment of the conductor to grant permission to ride on the train. We also cited the case of Simmons v. Oregon R. Co., 41 Or. 151, 69 P. 440, 1022, holding that the fact plaintiff was being carried gratuitously is immaterial, if the company accepted him as a passenger and expressly or impliedly agreed to transport him as such. As stated by the Missouri Court in Whitehead v. St. Louis, I. M. & S. Ry. Co., 99 Mo. 263, 11 S.W. 751, 6 L.R.A. 409, it was the duty of the conductor to see that persons did not ride upon the train, either with or without the payment of fare. His granting permission to the plaintiff in that case to ride was an act within his line of duty.

The cases cited above relate to injuries to plaintiff while they were riding upon freight trains. Simply stated, the conclusion reached is that if plaintiff acted in good faith and had the consent of the conductor to ride, the relation of passenger and

carrier was created. On the other hand, a passenger would be an intruder or trespasser if he gained his presence on the train surreptitiously, fraudulently or through collusion with an unauthorized person. Also, it is evident from the Shadid case that where there is a conflict in the evidence relating to facts from which it must be determined whether the injured person was an intruder, trespasser or passenger, then a jury question arises.

The cases to which we have referred establish the basic rules upon which we find support for our conclusion in sustaining the action of the trial court. However we must extend those principles one step further and make clear as a stated principle that which logically follows from the conclusions there reached. It is our conviction that such collusion or fraud as would destroy the relation of passenger and carrier is that which was entered into or perpetrated for the purpose of defrauding the carrier of its rightful compensation for the transportation. In § 990, 10 Am.Jur., Carriers, at page 45, it is stated:

"While a person may be entitled to all the rights and privileges of a passenger when on the vehicle by the consent, express or implied, of the agents of the carrier, and without even the payment of fare, he is not entitled to such rights and privileges when colluding with the officer or employee for the express purpose of defrauding the carrier of its rightful compensation for his transportation. * * *."

In Chicago, R. I. & P. Ry. Co. v. Warren, 132 Okl. 107, 269 P. 368, we held that the relation of passenger and carrier arises out of contract, which may be express or implied, and that such relation begins when a person puts himself in care of the carrier or directly within its control, with intention of becoming a passenger, and is accepted as such by the carrier.

Under the evidence of the case at bar the driver of defendant's cab was operating under a rental agreement for a fixed monthly rate. There was no accounting from the driver to the company for any fares collected. Even if plaintiff and the driver agreed upon the former's transportation for a "flat fare" of fifty cents, a fare less than the proposed trip would require under the company rules, it was nevertheless accepted by the driver in consideration of his services, and under the facts of this case it is clear that neither the plaintiff nor the driver intended any detriment to the defendant. Whether or not the driver should demand a fare to be determined by the cab meter with which his vehicle was equipped, and was, in fact, set in operation on the trip, or whether or not he accepted a flat rate, was a choice to be made by him. There being nothing in the record from which it can be said that plaintiff gained occupancy in the cab by collusion or fraud to the detriment of the defendant company where the driver accepted a fare agreed upon before transportation of plaintiff was attempted, and the driver having in all other respects proceeded to transport plaintiff as a passenger, the contract creating a relationship of passenger and carrier was complete.

The evidence on the part of the defendants, although in conflict with that of the testimony of the plaintiff, as to the agreement for the amount of the fare to be paid was nevertheless sufficient to establish a passenger status under the admitted facts as a matter of law. There was, then, no factual determination to be made by the jury and the trial court properly instructed the jury on this point.

It is argued in support of the second proposition that the proximate cause of the accident was the conduct of Shook in driving past a stop sign at a high rate of speed. In this connection defendants assert that plaintiff relies upon two claims of negligence as far as they are concerned; One, that the speed of the cab was a proximate or concurring cause of the collision; Two, the driver of the cab should have seen the "Shook" car and known that he was not going to observe the stop sign. It is urged that the applicable rule is that "negligence which is interrupted by the intervening act of another, which act is neither anticipated

nor reasonably foreseeable, cannot be held to be the proximate cause of an injury."

From our examination of the record, we are satisfied that plaintiff's evidence reasonably tended to prove that the defendants had failed to exercise that degree of care and skill required under the law, as expressed in the instruction given, in that the driver was proceeding in excess of the speed permitted by city ordinance, and should have been able to avoid the accident by attention to the duty owed plaintiff. Although there was some conflict in the evidence on these two points relied upon as showing negligence on the driver's part it was a matter within the province of the jury to determine, and the evidence was sufficient to support the verdict. The situation existing in this case is governed by the rule heretofore stated by this court in paragraph 2 of the syllabus by the court in Yellow Cab Operating Co. v. Bush, 185 Okl. 155, 90 P.2d 1074, and Yellow Dime Cab Co. v. Pike, 195 Okl. 373, 158 P.2d 469, as follows:

"It is immaterial that in connection with the accident causing the injury to the passenger there is negligence or wrongful act of a third person, such as the negligence of those managing a train, car, or vehicle with which the train or car in which the passenger is riding collides, or the like; it is enough that the negligence of the carrier contributes in some way or concurs with the negligence of third persons in causing the accident complained of."

There being sufficient evidence to justify the jury in finding defendants failed to exercise the degree of care and skill required in the protection of plaintiff riding in the cab as a passenger, defendants' claim of error is without merit.

Affirmed.

The court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner J. W. Crawford, and approved by Commissioners Jean R. Reed and James H. Nease, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter upon report and consideration in conference, the foregoing opinion was adopted by the Court.

WELCH, C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.